**STATE**

v.

**Pasquale P. SQUILLANTE, Jr.**

**No. 91–584–C.A.**

Supreme Court of Rhode Island.

March 26, 1993.

Jeffrey Pine, Atty. Gen., Jane McSoley, Asst. Atty. Gen., and James Caruolo, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Steven DiLibero, Providence, for defendant.

## OPINION

SHEA, Justice.

This case came before the court on appeal of the defendant from judgments of conviction for first-degree and second-degree sexual assault following a jury trial in the Superior Court. We affirm.

The defendant, Pasquale P. Squillante, Jr., was indicted on one count each of first-degree and second-degree sexual assault arising out of an incident on April 21, 1990. At trial the victim, whom we shall call Tracy,[1] testified that she reported for work as a nurse's assistant at the Northside Manor nursing home at 11 p.m. on April 20, 1990. Her shift ran from 11 p.m. to 7 a.m., and she was the only staff member present during that time. At approximately 2:30 a.m. the door alarm was triggered and defendant entered the facility. As she was about to dial 911, defendant entered the office and told her not to call the police, that he was Pat Squillante, the owner's son.

The victim further testified that defendant asked her if he could use the phone to call his mother for permission to borrow the nursing home's van and some money. While defendant was using the telephone, he grabbed the victim's arm, restraining her and preventing her from leaving the room. After hanging up the telephone, defendant asked Tracy to help him locate the keys to the locked filing cabinet. As she was looking through the other cabinet, defendant cornered her, restrained her arms, and put his hand down the front of her blouse. The defendant then forced the victim to the floor and, while restraining her, sexually assaulted her. After some time Tracy managed to free herself from defendant and went to hide in a patient's room. The defendant left a few minutes later. After defendant left the facility, the

1. This is a fictitious name.

victim continued to tend to the patients and completed her shift. She did not report the incident to the police or to anyone else until twelve days later, May 3, 1990.

I

On appeal defendant argues that the trial court erred in failing to grant a motion for a mistrial after the victim described defendant as a "drug user" and "a dangerous person." The defendant claims that this testimony was so prejudicial as to warrant a new trial.

 Tracy testified during the course of the trial that she did not want to report the assault to the police and that upon arriving home that morning she showered and attempted to get herself together. She stated, " * * * I was upset, I just didn't know what to do. I hope like, he would forget, he didn't remember, like, he was so drunk or with drugs that he wouldn't remember." The defendant immediately made a motion for a mistrial, which the court denied. The trial justice did, however, strike the offending testimony and promptly gave a cautionary instruction to the jurors, informing them in part that, "there is no evidence at all as to what might have caused this type of activity that night, no evidence at all of drugs, and I would caution you that that response by this witness was improper at this point, and I am striking it off the record." The trial court so ordered. That action and the cautionary instruction to the jury was a perfectly appropriate response.

The testimony in question could be highly prejudicial. Nevertheless, defendant was not automatically entitled to a mistrial. Whether a mistrial is appropriate is left to the sound discretion of the trial justice. *State v. Usenia,* 599 A.2d 1026, 1032 (R.I. 1991). An instruction that is timely and adequate can cure prejudice and obviate the need for a new trial. Here the trial justice immediately gave an effective instruction to the jury. That instruction, combined with the testimony's being strick-

en from the record, cured any real prejudice to defendant.

■ The defendant also argues that the victim's reference to defendant as dangerous acted to inflame the jury and created a basis for a mistrial. In these situations the trial court should examine the statement in relation to the facts and circumstances surrounding the statement. *State v. Ortiz*, 609 A.2d 921, 929 (R.I.1992). Here the victim was testifying about her reaction to the sexual assault and about why she reported the incident after a delay. It was in this context that she expressed the belief that defendant was dangerous. Such an opinion could hardly come as a surprise to the jury. On the contrary, it would be a normal reaction of any person in such a situation. The statement was therefore not unduly prejudicial to defendant. Again the trial justice's cautionary instruction was sufficient.

## II

The defendant next argues that the trial justice erred in allowing Tracy to testify about harassing phone calls that she claimed she received from defendant after the assault. The defendant argues that her claim that she recognized the voice on the phone to be that of defendant did not constitute sufficient voice identification to allow the testimony to be presented to the jury. That argument fails to take into account this court's decision in *State v. Marrapese*, 122 R.I. 494, 409 A.2d 544 (1979).

■ In ruling on the admissibility of voice identifications in *Marrapese*, this court equated the level of authentication necessary to identify a voice to that which is necessary to identify a document. The proponent of the evidence need only establish the witness's familiarity with the voice sought to be identified. The question of whether the witness has properly identified the voice becomes an issue for the jury's determination. *Id.* at 501–02, 409 A.2d at 549. The question of the reliability of the identification goes to the weight but not to the admissibility of the testimony.

■ Here the prosecutor sought to have Tracy testify about a phone call she said she had received from defendant in which he had made specific reference to the sexual assault. Upon objection of defendant the trial court ordered a voir dire hearing outside the presence of the jury, where Tracy's ability to identify defendant's voice was explored. During this examination she testified that she had heard defendant's voice a few times on the telephone in the course of the ten years that she worked at the nursing home. In addition she heard his voice on the night of the assault, both when he spoke to her directly and when he telephoned his mother in her presence. Her familiarity with defendant's voice was adequately established.

The defendant argues that the trial court should have applied a more stringent criterion for admissibility of the voice identification and directs our attention to our holding in *State v. Wheeler*, 496 A.2d 1382 (R.I.1985), to support his contention that this case calls for the application of the same type of standard we had applied in that case. In *Wheeler* the trial court was asked to consider spectrographic evidence of voice identification. We can easily distinguish *Wheeler*. In that case there was no witness testifying that he or she recognized the caller's voice. What was being offered by the state was a tape recording of a telephone call to the police by a caller who did not identify himself. Only after a ten-day hearing before the trial justice alone wherein experts described the relevant technology and the reliability of the experts' conclusions, was the jury allowed to hear and consider that evidence. In that case we noted with approval the trial court's vigorous examination of the reliability of the spectrographic evidence before he allowed it to come in. Because the court was dealing with a relatively new scientific process, the lengthy investigation into the reliability of the information that such a test would produce was both necessary and proper. But even in that case we held that the court's finding of reliability was not conclusive and that the jury could disregard the evidence if it found spectro-

graphic voice identification to be unreliable or misleading. *Id.* at 1389. This case involves a witness's identification of a voice. The prosecutor need only establish that the witness is sufficiently familiar with the voice in question. The testimony then is admitted for the jury's consideration. *State v. Marrapese*, 122 R.I. at 501–02, 409 A.2d at 549.

### III

The defendant's next allegation of error concerns the trial court's admission of the testimony of Sergeant Michael Lupo of the North Providence police department. A major issue raised by defendant was the fact that the victim did not contact the police about the assault until May 3, twelve days after it occurred. Tracy testified that she did not tell the police, at her first contact, that she had been the victim of a first-degree sexual assault; she reported only a second-degree assault, a touching. On May 10, 1990, she was called back to the station to discuss her allegations with Sergeant Lupo, who was investigating the case. At trial she testified that on that occasion she told Sergeant Lupo that she had actually been raped. He later testified that in the May 10 interview she asked about the procedures that would be followed were she to make a report of first-degree sexual assault.

Prior to trial defendant had requested under Rule 16(a)(7) of the Superior Court Rules of Criminal Procedure that Sergeant Lupo provide a summary of the events of his May 10 interview with the victim. The report that was provided in response made no mention of first-degree sexual assault. The prosecutor informed the trial justice that before trial she had asked the sergeant if Tracy had said at that meeting that she had been "raped." Sergeant Lupo responded that she had not. That statement to the prosecutor did not actually contradict Lupo's testimony at trial.

■ We have in the past described Rule 16 as among the most liberal discovery mechanisms in the United States. *State v. Coelho*, 454 A.2d 241 (R.I.1982). Under that rule the state must provide defendant with access to evidence that is within the control of the state. Rule 16(a)(7) compels the state to provide,

"as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial."

When Rule 16 is violated, it is within the discretion of the trial justice to determine an appropriate sanction if the justice does decide that some sanction is necessary. This court will not overturn the trial court's determination absent a clear abuse of discretion. *State v. Coelho*, 454 A.2d at 245. We have listed the four factors a trial court should consider in deciding the appropriate remedy for a violation of Rule 16: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Id.*

■ The first factor controls what direction the court's inquiry will take. When the nondisclosure is intentional, the trial court applies stringent criteria, making it very difficult for the state to survive a motion for mistrial. When, however, the nondisclosure is unintentional, a defendant must then show procedural prejudice in order to prevail in his or her mistrial motion. *State v. Bibee*, 559 A.2d 618, 621 (R.I.1989); *State v. Concannon*, 457 A.2d 1350, 1354 (R.I.1983).

■ Since no evidence was presented to show that the nondisclosure was intentional, we shall assume that it was inadvertent. *State v. Powers*, 566 A.2d 1298, 1301 (R.I. 1989). The burden of establishing procedural prejudice then lies with defendant. The defendant must show that "there is a likelihood that trial counsel using the undisclosed information could have created a reasonable doubt in the minds of one or

more jurors to avoid a conviction." *State v. Concannon,* 457 A.2d at 1354.

In this case defendant attempted to discredit Tracy's testimony by stressing the fact that she did not report the assault to the police at all until many days later and that her allegations appeared to change each time she discussed the incident with the police. May 10 was the second time she was . at the police station. The actual charge of first-degree sexual assault was filed on July 11, 1990. The sergeant's testimony that on May 10 Tracy asked him questions about the procedure that is followed in the case of a first-degree sexual assault report contradicted her testimony that she actually reported the incident on that date. In final argument defendant relied heavily on both the delay in reporting the incident and the apparent contradiction in her various reports. Defense counsel stressed the inconsistencies between what Sergeant Lupo said of the May 10 interview and what Tracy said about the same meeting. The defendant's reliance on this line of argument was not at all inhibited by Sergeant Lupo's unexpected testimony. He did not suffer any procedural prejudice because of the inadvertent nondisclosure of the testimony. We conclude that the trial court's decision not to pass the case was proper.

## IV

The defendant next argues that it was reversible error to limit defense counsel's cross-examination of a prosecution witness, Joyce Woodard (Woodard). Defense counsel sought to introduce evidence of the prior criminal convictions of Woodard in order to expose bias in testifying for the state. The defendant argues that he was prevented from cross-examining Woodard about her having been afforded two "filings" in the District Court. If a filing a criminal charge is put aside for a year, and if the defendant is not arrested again in a one-year period, the charge is dropped. The witness had allegedly received a filing for a fraudulent check charge on October 9, 1990, and a second filing on March 12, 1991, for a shoplifting offense. The practice of the District Court is to afford each criminal defendant a single filing, and, to prosecute criminal offenses occurring during the year of the filing as violations. The trial court foreclosed this line of inquiry.

A defendant's right to confront the witnesses against him, which includes the right of cross-examination, is guaranteed by both the State and the Federal Constitutions, and we treat allegations of its violation seriously. "The right of confrontation is concerned with the proposition that a jury be allowed to evaluate any motive that a witness may have for testifying." *State v. Beaumier,* 480 A.2d 1367, 1372 (R.I. 1984). In this case not allowing defense counsel to explore Woodard's possible bias may have denied defendant his right to full confrontation. The defendant should have been allowed to explore the possibility that the witness received a lenient disposition of her criminal charges in exchange for her testimony. Again, however, it does not automatically mandate a new trial. The denial of the right to confrontation is subject to harmless-error analysis. The inquiry is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986).

In *Van Arsdall* the Supreme Court outlined several areas of inquiry for appellate courts reviewing violations of the right to confrontation. Those areas include the importance of the witness's testimony to the state's case, the existence of corroborating evidence, and the extent of cross-examination actually afforded to defense counsel. *Id.*

On several occasions this court has reviewed the question of whether the denial of cross-examination warrants a new trial. In a situation wherein the credibility of the witness sought to be impeached was vital to the state's case, we have sustained a defendant's appeal and ordered a new trial. *See State v. Freeman,* 473 A.2d 1149

(R.I.1984). That is not the situation in this case. Here, Woodard had testified, on direct examination about a conversation she had with defendant on the morning of April 21, 1990. Woodard testified that defendant made an incriminating statement to the effect that he had made a mess of things. Although this was not a direct admission to the sexual assault, the statement was corroborative of Tracy's testimony.

Defense counsel sought to create the impression in the minds of the jury that this statement actually referred to alcohol use and defendant's need for treatment. He was allowed extensive cross-examination on this issue, and because Woodard's testimony was not a crucial element of the state's case against defendant, we conclude that the trial court's limitation of the cross-examination of Woodard, although inappropriate, was not reversible error, because it was harmless beyond a reasonable doubt.

## V

■ The defendant's next allegation of error is that he was improperly restricted from cross-examining Woodard regarding her use of profane language and her prior drug use. When Woodard testified on direct examination about the statement defendant had made to her on the morning of April 21, 1990, she exhibited a reluctance to quote defendant verbatim. After a sidebar conference in which the prosecutor asked that the witness be allowed to use defendant's exact words, the witness testified to defendant's actual statement. That quotation contained very vulgar language.

On cross-examination defense counsel questioned Woodard about the frequency with which she used the same vulgarities she had shown a reluctance to use when testifying about defendant's statement to her. When she denied using such language habitually, defense counsel sought to impeach her by the use of two letters she had written to defendant while he was in prison. The letters apparently contained similar vulgar language. However, defense counsel did not want the letters to be placed into evidence because other parts of the letters could expose defendant to other areas of inquiry prejudicial to him. The trial court refused, therefore, to allow the use of the letters for cross-examination since the prosecutor would have a right to examine the witness on the other information they contained. The defendant argues that this limitation violated his right to confrontation.

The United States Supreme Court has stated that:

"a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors * * * could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. at 480, 106 S.Ct. at 1436, 89 L.Ed.2d at 684 (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355 (1974)).

The defendant was allowed some cross-examination on the issue of the witness's use of vulgar language, which satisfied defendant's confrontation right. It was then within the sound discretion of the trial justice to limit the scope of that cross-examination. *State v. Payano*, 528 A.2d 721, 729 (R.I.1987).

■ The defendant also complains that the trial court was in error in not allowing defense counsel to use some of Woodard's letters to impeach her on the issue of her own alleged drug use. We disagree.

At trial, defense counsel was permitted extensive cross-examination of Woodard. He questioned her closely about her drug use around the time of her conversation with defendant on the morning of April 21, 1990. Defense counsel, however, was precluded from using the letters Woodard wrote in August of 1990. These letters are said to contain reference to her drug use that defendant would have used to impeach her testimony further. The defendant argues that this preclusion was error. He directs our attention to *State v. Kelly*, 554 A.2d 632 (R.I.1989). In *Kelly* the defen-

dant had appealed from a conviction for first-degree sexual assault. The trial court had excluded evidence of the victim's use of marijuana during the twenty-four-hour period immediately preceding the assault. The defendant argued on appeal that this exclusion constituted an impermissible restriction on his right to cross-examine the witness. This court agreed that the question of whether a witness was under the influence of alcohol or drugs during the period about which he or she is testifying is directly related to the witness's ability to perceive and recall the events in question. This evidence is never excludable on relevance grounds because witness credibility is always relevant. *See State v. Kelly,* 554 A.2d at 637; *State v. Carrera,* 528 A.2d 331, 334 (R.I.1987).

In this case defense counsel sought to introduce letters that may or may not have given rise to the inference that Woodard was using drugs or alcohol in August of 1990. However, the conversation about which she was testifying occurred in April of 1990. Evidence of the witness's use of drugs or alcohol four months after the conversation in question was simply not relevant. Defense counsel was afforded ample opportunity to cross-examine the witness about her drug use in April 1990. In fact the trial court did allow the defense some latitude in questions about her alleged use in August of 1990.

## VI

█ The final issue is that the trial court excluded the testimony of two physicians who had examined defendant and found him to be suffering from herpes simplex 1 and 2.

In a hearing outside the presence of the jury the first doctor testified that he examined defendant at the Adult Correctional Institutions in January 1991. The defendant tested positive for herpes simplex 1 and 2, and he appeared to have a chronic infection.[2] He explained that herpes is transmittable through secretions of the mouth, throat, genitalia, or pelvic organs at a time when the virus is "shedding". A virus is shedding when a culture can be grown from the secretions. However, the doctor also testified that if the virus was not shedding, there would be no way one could contract herpes through sexual contact. He also testified that he did not know how to determine if a virus is shedding.

The other physician to testify at the voir dire was Nicholas Joseph Turilli, defendant's treating physician from July 9, 1985, until October of 1989. Doctor Turilli testified that he first diagnosed defendant with herpes simplex 1 and 2 in June of 1986. He agreed with the first physician's testimony about how the herpes virus is transmitted. In answer to the prosecutor's question, "[c]an you testify to a reasonable degree of medical certainty if this Defendant had sexual intercourse with a woman on one occasion, whether or not he had an open lesion, that he would have transmitted herpes and she could have contracted it?," the witness responded that he could not.

The trial justice granted the state's motion in limine, stating that it "would be purely speculative on the part of this jury to determine whether or not it accepts the information that there was sexual penetration or no sexual penetration because either the absence of herpes or the presence of herpes." It is from this ruling that defendant now appeals.

Rule 401 of the Rhode Island Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The issue of whether defendant had had forcible sexual intercourse with Tracy was the fact to be deter-

---

**2.** Herpes simplex is defined as "a variety of infections caused by h. simplex virus (herpes virus) types 1 and 2; type 1 infections are marked by the eruption of one or more groups of vesicles on the vermilion border of the lips * * * type 2 by such lesions on the genitalia; both types commonly are recrudescent." *Stedman's Medical Dictionary* 644 (5th Unabridged Lawyers Ed.1982). "Recrudescent" is defined in *Stedman's Medical Dictionary* as "[b]ecoming active again, relating to a recrudescence," *Id.* at 1207.

mined in this case. The defense hoped to show that because Tracy had not contracted the herpes virus, it was unlikely that sexual contact between her and defendant had occurred.

"As a general rule the resolution of questions of evidentiary relevance, materiality and admissibility rests in the sound discretion of the trial justice; his ruling will not constitute reversible error unless it is a prejudicial abuse of discretion." *State v. Gelinas,* 417 A.2d 1381, 1386 (R.I.1980). The trial justice must first determine whether the evidence being offered falls within the definition of relevant evidence provided by the Rhode Island Rules of Evidence. Even when the evidence is relevant, it is not automatically admissible. The trial court must assess whether the offered evidence, though relevant, is unfairly prejudicial to the opposing party or *would mislead or confuse the jury.* R.I.R.Evid. 403.

The evidence that defense counsel sought to introduce was that the defendant had been diagnosed as having herpes simplex 1 and 2 prior to the alleged sexual assault. The medical experts could not testify about whether defendant was experiencing a period during which the virus would have been transmittable at the time of the assault. They also could not testify to whether a single contact would have passed the virus to the victim. The relevance of such testimony was tenuous at best. It would have been of little help to the jury in deciding the issues in the case, could easily have mislead or confused the jury, and was properly excluded by the trial justice under Rule 403 of our rules of evidence.

For these reasons the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the papers of the case are remanded to the Superior Court.