STATE

v.

Shannon O. RICE.

No. 92–135–C.A.

Supreme Court of Rhode Island.

Nov. 10, 1993.

Jeffrey Pine, Atty. Gen., Lauren Sandler Zurier, and Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender and Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

SHEA, Justice.

This matter came before the Supreme Court on the appeal of the defendant, Shannon O. Rice (Rice), from a Superior Court jury conviction of one count of assault with a dangerous weapon and one count of robbery. For the following reasons we affirm.

On appeal defendant raises only one issue. He asserts that the trial justice erred when he excluded evidence that the other two assailants, Warren Peckham (Peckham) and David Casey (Casey), had formed an entirely separate felonious intent, in concert, moments prior to the assault on and robbery of David Butterfield (Butterfield).

The evidence presented established that at approximately 6 p.m. on the evening of November 22, 1989, Butterfield telephoned his mother from a public phone booth located in the vicinity of his apartment on Post Road in East Greenwich, to make plans to visit her on the following day, Thanksgiving. As Butterfield was speaking on the telephone, defendant Rice and two other youths, Peckham and Casey, approached him. Casey asked Butterfield whether he had any drugs. Butterfield responded in the negative and continued speaking on the telephone, but the youths continued to stand in close proximity

to the booth. Butterfield asked the youths to leave, and Casey asked him to say please. Butterfield ignored Casey's comment, whereupon Casey began striking him in the face. Casey pulled out a small knife, and Butterfield likewise pulled out a small folding pocket knife but did not open the blade.

The assailants were not deterred by Butterfield's weapon, and in an attempt to flee, Butterfield ran toward a nearby store, Bob's Coins. The three youths pursued him, and upon catching up with him, the assailants began striking him in the face. At some point Butterfield dropped the small knife he had been carrying, and he saw defendant retrieve it from the ground. Subsequent to dropping his knife, Butterfield was stabbed in the right thumb by one of the attackers, but he could not state with certainty which one. During the assault Butterfield attempted to flee, but he found himself surrounded by the assailants. At some point he did manage to break away and run toward his apartment. The youths overtook Butterfield in the parking lot, held him down against a car, and took turns holding and striking him. Butterfield testified that during the beating Casey asked the others whether they wanted to "roll" him, and they responded affirmatively. Thereupon Rice and Peckham held Butterfield, while Casey took $4 from his pocket and one of the assailants relieved him of his coat.

At that point Butterfield's brother, Thomas Butterfield, emerged from the apartment building carrying a baseball bat. Thomas Butterfield gave the bat to his brother, who then began chasing the attackers. They fled toward Bob's Coins and eventually managed to elude the bat-wielding Butterfield.

As a result of the altercation Butterfield sustained injuries to his face, a deep stab wound in his right thumb, and a broken hand.

I

On appeal defendant challenges his conviction of assault with a dangerous weapon and robbery on the grounds that the trial justice erred in failing to allow him to present evidence that Peckham and Casey had formed a felonious intent to commit another illegal act, in concert, moments prior to the assault on and robbery of David Butterfield.

█ The defense sought to introduce evidence that just prior to the attack on Butterfield, Casey and Peckham had entered a bar, Alias Smith & Jones, where they attempted to break into a condom machine in the men's bathroom. The bar's bouncer, Kurt Vinacco (Vinacco), ejected them. In an attempt to demonstrate that defendant was merely a bystander to the Butterfield incident, the defense sought to question the bartender at Alias Smith & Jones, Joseph Welch (Welch), about the vandalism perpetrated on the condom machine. The state objected to the question, and the trial justice sustained the objection. It is not clear on which grounds the trial justice sustained the objection, but to facilitate the analysis we shall assume that the trial justice ruled under Rule 602 of the Rhode Island Rules of Evidence.

Rule 602 states:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself or herself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses."

In the case *State v. Ranieri*, 586 A.2d 1094 (R.I.1991), this court stated:

"In deciding whether a witness is competent for purposes of Rule 602, the trial justice must determine whether a witness had a sufficient opportunity to perceive the subject matter about which he is testifying. * * * The justice is not making a credibility determination and is not judging whether the witness is accurately and truthfully relating that which he perceived." *Id.* at 1098.

In this case the defense sought to elicit the contested testimony from the bartender, Welch, not the bouncer, Vinacco. Welch only saw Peckham and Casey enter the bathroom. By his own admission he did not witness what actually occurred in the bathroom.

Welch stated that Vinacco entered the bathroom and ejected the pair but that that was the extent of his personal knowledge of the matter. Consequently the trial justice was not in error when he sustained the state's objection since Welch lacked the personal knowledge required by Rule 602. *See Hallquist v. Local 276, Plumbers and Pipefitters Union*, 843 F.2d 18, 24 (1st Cir.1988).

Even aside from the strictures of Rule 602, the trial justice properly barred admission of the evidence on grounds of relevance. The defense was attempting to employ a little utilized device termed "reverse 404." Rule 404(b) provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

The above rule is generally utilized to support an accusation against an accused. In this case, defendant attempted to use the rule in reverse, that is, to demonstrate that because he was not involved in prior criminal activity, it was unlikely that he participated in the activity in question. Reverse Rule 404(b) is rarely used and is generally reserved for instances of mistaken identity in order to prove that the accused was not at the scene but that some other third party was. *See United States v. Stevens*, 935 F.2d 1380 (3d Cir.1991).

On the subject of "reverse 404" Wigmore states:

"It should be noted that this kind of [character] evidence may be also available to *negative [sic] the accused's guilt.* E.g., if A is charged with forgery and denies it, and if B can be shown to have done a series of similar forgeries connected by a plan, this plan of B is some evidence that B and not A committed the forgery charged. This mode of reasoning may become the most important when A alleges that he is a victim of *mistaken identification.*" 2 Wigmore, *Evidence* § 304 at 252 (Chadbourn rev.1979).

This defendant does not dispute the fact that he was present at the crime scene. The only question at issue is to what extent, if any, Rice participated in the assault on and robbery of David Butterfield. There is no question regarding the possibility of mistaken identity. Given the facts of this case, we conclude that the testimony that the defense attempted to introduce into evidence was not relevant to the issues to be decided and would have served only to confuse the jury. Reverse Rule 404(b) is inapplicable to the case at bar, and therefore, we conclude that the trial justice properly excluded the testimony at issue.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

FAY, C.J., did not participate.