**STATE**

*v.*

**Ansley PETTIWAY.**

No. 93–390–C.A.

Supreme Court of Rhode Island.

April 12, 1995.

Jeffrey Pine, Atty. Gen., Andrea Mendes, Sp. Asst. Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld and Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This matter came before the Supreme Court on the appeal of Ansley Pettiway (defendant) from judgments of conviction on one count of first-degree child-molestation sexual assault and one count of second-degree child-molestation sexual assault. After a jury trial in Superior Court, the defendant was sentenced to serve twelve years of a thirty-year sentence with the remaining eighteen years suspended with probation on the count of first-degree child molestation, and he received a ten-year suspended sentence with probation on the count of second-degree child molestation. On appeal the defendant argued that his constitutional rights were violated as a result of the trial justice's limitation upon defense counsel's cross-examination of the complaining witness. We affirm the judgments for the reasons stated below. The facts of the case insofar as pertinent to this appeal are as follows.

On February 28, 1992, defendant was charged by criminal indictment No. P1/92–612A on three counts of first-degree child molestation in violation of G.L.1956 (1981 Reenactment) § 11–37–8.1, as amended by P.L.1988, ch. 219, § 1, and on three counts of second-degree child molestation in violation of § 11–37–8.3, as amended by P.L.1988, ch. 219, § 1, upon the child victim, whom we shall call Melissa.

Melissa, who was fourteen years old at the time of the trial, lived with her mother in an apartment in Providence from 1985 to 1990. The defendant was the boyfriend of Melissa's mother and moved in with Melissa and her mother in 1988. He lived with them for approximately two years.

The defendant's molestation of Melissa began in 1989 when she was eleven years old and took place in a bedroom of the apartment when Melissa's mother was either in the kitchen or not at home. The first incident occurred when Melissa's mother came home one evening with some woman and ordered Melissa, who was in her own bed, to go lie with defendant in his bed while she stayed at the kitchen table and did cocaine. Melissa testified that when she went into defendant's bed, he began touching her breast, at first over her nightgown and then underneath it. The defendant then penetrated Melissa's vagina with his fingers.

Melissa estimated that approximately ten similar incidents occurred while defendant lived with them in the Providence apartment. Sometimes defendant would penetrate Melissa's vagina with his tongue, and on one occasion, defendant put his unclothed penis between Melissa's legs and made her touch it. When Melissa and her mother moved to a different address, defendant, who no longer resided with them, molested Melissa once or twice by touching her breast.

Melissa never disclosed these acts to anyone until she confided to her girlfriends that defendant had sexually abused her. Her friends persuaded her to tell her mother and later, when Melissa's mother suggested that defendant live with them again, Melissa protested and finally told her about the abuse. Melissa testified that she did not tell her mother sooner because she was afraid of defendant.

In October 1991 Melissa and her mother, who were then living in Warwick, reported the sexual-abuse allegations against defendant to the Warwick police. Warwick police detectives Thomas Conroy (Conroy) and Paul Ainsworth (Ainsworth) conducted an investigation which led to defendant's being taken into custody on October 30, 1991. The defendant was transported to the Warwick police headquarters, advised of the allegations against him, and given his *Miranda* rights.

The defendant later voluntarily executed a written confession admitting to the charges of sexual abuse of Melissa. In the written confession, defendant admitted that in an effort to "explain" to Melissa the "facts of life about her body," he touched her breast and penetrated her vagina with his fingers.

In September 1992, after defendant was indicted and before his trial, Melissa was interviewed by a child protective investigator for the Department of Children, Youth, and Families (DCYF) and reported that she had been sexually abused by two men that her mother had brought home, other than defendant, in separate incidents. According to the written report taken by the investigator, the incidents involving the two other men occurred subsequent to the sexual abuse by defendant. Our careful review of the record fails to disclose whether these subsequent allegations resulted in prosecutions; however, both parties concede in their appellate briefs that the allegations were neither recanted nor otherwise proven false.

During the trial, defense counsel brought a motion in limine for the purpose of introducing the September 1992 DCYF report. Through the report, defense counsel sought to impeach Melissa's credibility by showing that she made sexual-abuse allegations against other men. In support of the motion, defense counsel cited this court's opinion in *State v. Oliveira*, 576 A.2d 111 (R.I.1990), in which we ruled that evidence of the complaining witness's prior allegations of sexual assault may be admitted at trial to challenge the complaining witness's credibility, even if the allegations were not proven false or withdrawn. Following a hearing on the motion, the trial justice disallowed defendant's use of the DCYF report, reasoning that the rule set forth in *Oliveira* was inapplicable to the instant case because the allegations made by Melissa against the other men occurred subsequent to the allegations made against defendant.

■ The defendant's sole contention on appeal is that his constitutional rights were violated because he was not permitted to show that Melissa lodged sexual-abuse allegations against other men. Specifically, defendant complains that his rights to confront and cross-examine the witnesses against him were abridged as a result of the trial justice's refusal to admit into evidence the DCYF report and his refusal to permit defense counsel to question Melissa about the allegations she made to the DCYF investigator. As a result, defendant avers, he was prevented from effectively attacking Melissa's credibility.

The right of an accused to confront the witnesses against him or her is guaranteed by the Sixth Amendment to the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). This right is applicable in state criminal proceedings through the Fourteenth Amendment to the United States Constitution, *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and by art. 1, sec. 10, of the Rhode Island Constitution. *State v. Eckhart*, 117 R.I. 431, 435, 367 A.2d 1073, 1075 (1977). Of primary interest to a criminal defendant in exercising his or her criminal rights secured by the confrontation clause is the right to cross-examine witnesses. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965).

■ Cross-examination provides counsel with the opportunity to test a witness's veracity and credibility and to discredit the witness's testimony as is necessary. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. Although the permissible scope of and extent of cross-examination lies within the sound discretion of the trial justice, *State v. Benevides*, 420 A.2d 65, 69 (R.I.1980), we are mindful of the Supreme Court's pronouncement that a cross-examiner should be afforded ample opportunity to develop the issues of bias, prejudice, and motivation properly before the jury. *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

In the instant case, defense counsel was prohibited from questioning Melissa about the allegations that she made against the other men to the DCYF investigator, and therefore, the defense was denied the opportunity to cross-examine Melissa fully for the purpose of presenting to the jury its theory that Melissa had a pattern of accusing her

mother's boyfriends of sexually assaulting her. Although it is sheer speculation that the jury would have accepted this line of reasoning had it been adduced at trial, we believe that the members of the jury were entitled to consider the defense theory so that they could make an informed judgment about the weight to place on Melissa's testimony. *Davis,* 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354.

Our finding that defendant's right to confrontation was improperly limited does not automatically mandate a new trial. *State v. Squillante,* 622 A.2d 474, 479 (R.I.1993). The denial of the right to confrontation is subject to harmless-error analysis. *Id.* The inquiry is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986).

"In *Van Arsdall* the Supreme Court outlined several areas of inquiry for appellate courts reviewing violations of the right to confrontation. Those areas include the importance of the witness's testimony to the state's case, the existence of corroborating evidence, and the extent of cross-examination actually afforded to defense counsel." *Squillante,* 622 A.2d at 479.

The application of these factors in the instant case persuades us that the trial justice's limitation upon defendant's cross-examination of Melissa was harmless beyond a reasonable doubt. Here, defendant was afforded the opportunity to confront Melissa, his accuser, and challenge her credibility. Indeed, our thorough review of the record reveals that the trial justice gave defense counsel wide latitude to cross-examine Melissa fully in regard to the matters she testified to on direct-examination and was permitted to explore in depth Melissa's memory about the incidents of abuse and her reasons for not reporting the abuse sooner.

Although we are mindful of the importance of Melissa's testimony to the state's case, it was not the only evidence establishing defendant's guilt. The state's case also relied upon defendant's written confession, which not only corroborated Melissa's testimony but, if believed by the jury, alone was sufficient evidence upon which to support a verdict of guilty. Moreover, the testimony of Detectives Conroy and Ainsworth further supports the state's case against defendant.

Because we believe that Melissa's testimony was not such a crucial element in the state's case against defendant, we conclude that the trial justice's limitation upon defense counsel's cross-examination of Melissa was not reversible error because it was harmless beyond a reasonable doubt. *Squillante,* 622 A.2d at 479.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.