## STATE

v.

## Camillo **LORENZO.**

No. 2004–302–C.A.

Supreme Court of Rhode Island.

Feb. 24, 2006.

Diane Daigle, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

An erstwhile romantic relationship between neighboring residents of a housing complex for the elderly and the disabled ended in a brutal assault. The complaining witness, Delphine Garnetto, testified that several months after the relationship had ended she was viciously attacked and stabbed outside her apartment by the knife-wielding defendant, Camillo Lorenzo. Mr. Lorenzo, on the other hand, testified that Ms. Garnetto was in fact the aggressor, thereby advancing a theory of self-defense.

Mr. Lorenzo now appeals from a conviction in Superior Court on four counts: count 1, assault with a dangerous weapon in a dwelling with the intent to murder; count 2, assault with intent to murder; count 3, assault with a dangerous weapon; and count 4, possession of a knife with a blade in excess of three inches. On both counts 1 and 2, defendant was sentenced to twenty years at the Adult Correctional Institutions (ACI), with ten years to serve, ten years suspended, and ten years probation. On count 3, the court sentenced defendant to twenty years at the ACI, with five years to serve. The defendant received one year at the ACI on count 4, with one year to serve. All sentences were ordered to be served concurrently.

On appeal, defendant argues that the trial justice committed reversible error by refusing to admit testimony concerning the mental health of the complaining witness at the time of the incident. The defendant argues further that the trial justice erred by disallowing inquiry, during defendant's cross-examination of Ms. Garnetto, into defendant's motive for stabbing her. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the written and oral submissions of the parties and examination of the record, we are of the opinion that the issues raised in this appeal may be resolved without further briefing or argument. Finding no error in the trial justice's evidentiary rulings, we affirm the judgment of conviction.

## Facts and Procedural History

At the time of the incident, both Mr. Lorenzo and Ms. Garnetto maintained residences at Pocasset Manor in Providence. The defendant, partially disabled from two heart attacks and a stroke, took up residence in Pocasset Manor in November 1999 after an argument with his wife. At some point in March or April 2000, defendant entered into a dating relationship with Ms. Garnetto, who lived on the same floor of the high-rise apartment building.

After about a year, the liaison ended. Ms. Garnetto attributed the termination of the relationship to the incompatibility of the couple's respective medical patches,[1] while Mr. Lorenzo testified that he was attempting to reconcile with his wife and began staying at her house. Mr. Lorenzo nevertheless maintained his apartment at Pocasset Manor because, he explained, "[a]t my home with my wife we did not have enough space to put all the furniture I had," and he said that he would go to the apartment primarily "just * * * to change clothes." The defendant had informed Ms. Garnetto that he was legally married during the course of their relationship, but Ms. Garnetto thought "he was trying to get a divorce."

Ms. Garnetto testified that on the morning of September 8, 2001, defendant was "lurking in the hallway" as she left her apartment. The defendant asked Ms. Garnetto whether her daughter or her daughter's boyfriend was in the apartment. When Ms. Garnetto answered no, defendant asked her to accompany him to his apartment. When she declined his increasingly insistent entreaties, Ms. Garnetto testified, "he grabbed me by the hand

and he was forcing me to go to his apartment," after which her body "hit the back of the wall." Ms. Garnetto said she attempted to run, but defendant dragged her from behind, causing her to hit the wall again. At some point in the struggle, defendant pulled from his shirt a knife, which he tried "to jab into" her. Ms. Garnetto broke free without injury; but, as she was running for the door to the sixth-floor stairwell, defendant stabbed her on the shoulder. Ms. Garnetto turned toward defendant, grabbing the blade of the knife with her hands in an attempt to prevent further thrusts. The struggle spilled out onto the stairwell, and Ms. Garnetto was able to escape only after both fell onto the landing several steps below.

Another resident of Pocasset Manor, Anthony Carnevale, testified that he entered the stairwell after hearing "a little noise." There, upon the landing, he observed Ms. Garnetto "laying down," and defendant above her "with the knife over her chest." Mr. Carnevale approached, shouting "Camillo, stop," repeating defendant's name three times, whereupon defendant looked up at Mr. Carnevale "like he was in a daze." At that point, according to Mr. Carnevale, Ms. Garnetto was able to slip out from under defendant and flee down the stairs. Fearing that defendant would redirect his ire towards him, Mr. Carnevale retreated from the stairwell and into the elevator on the sixth floor.

Responding to the call of a domestic disturbance at Pocasset Manor, Providence Police Officer Michael Otrando observed defendant running toward his police cruiser. According to Officer Otrando, defendant "continued to run while reaching into

---

1. Ms. Garnetto testified that she "was trying to stop smoking because [Mr. Lorenzo] didn't like cigarette smoke, so what I did is I went out and bought patches for myself." She went on to testify that Mr. Lorenzo "has a heart patch and the two patches did not connect so I had to stay away from him" and that "[i]t would make him sick if I got next to him so I had to stay away from him."

his shirt[, and] came out with a large knife." Officer Otrando repeatedly ordered defendant to stop and drop the weapon, with which order defendant complied. Another police officer, Louis Salinaro, arrived on the scene and handcuffed defendant, placing him in the rear seat of the police cruiser. An ambulance also arrived and tended to Ms. Garnetto, who was bleeding heavily from lacerations to her hands and shoulder.

Mr. Lorenzo's testimony concerning the events of September 8, 2001, is strikingly different from that of Ms. Garnetto. After a morning walk with his wife, defendant said that he proceeded to his apartment in Pocasset Manor to shower and change clothes. As he was removing some garbage from his apartment, he saw Ms. Garnetto coming out of her apartment. According to defendant, Ms. Garnetto, without saying a word, brandished a knife from her pocketbook. The defendant said he tried to take the knife away from Ms. Garnetto, and was following her as she was backing up to "prevent[ ] her from getting hurt." As Ms. Garnetto backed into the door to the stairwell, defendant alleged, the door immediately swung open and both "tumbled down the stair until we landed."[2] The defendant said that he eventually grabbed the knife and placed it inside his shirt "without thinking. I just put it inside there so that she can see that I had nothing in my hand." The defendant testified that he did not hear Mr. Carnevale's admonitions or otherwise see the witness in the stairwell. The defendant said he and Ms. Garnetto then proceeded separately to the first floor and into the hands of Officer Otrando, who was waiting outside.

Before trial, the state filed three motions *in limine*, amongst others not at issue in this appeal, concerning the mental health of Ms. Garnetto, specifically concerning her prescription medications, her medical/psychiatric history, and her Supplemental Security Income (SSI) status. The motions referred to defendant's attempt to obtain Ms. Garnetto's "medical/psychiatric records" from the Social Security Administration (SSA), pursuant to a subpoena duces tecum under Rule 17(c) of the Superior Court Rules of Criminal Procedure.[3] Defense counsel sought the records because a notation in Ms. Garnetto's hospital records of September 8, 2001, showed that she previously had been treated for depression and was taking an antidepressant medication. The SSA informed defense counsel, however, in a letter dated September 17, 2002, that it was unable to locate Ms. Garnetto's medical file pertaining to her disability. Despite the SSA's inability to locate the medical records, defense counsel argued that testi-

---

**2.** The defendant said that the door through which he and Ms. Garnetto passed contained a crash bar, which Ms. Garnetto was able to trigger, thus opening the door by simply pressing her back against it. The trial justice noted, in ruling upon defendant's motion for a new trial on October 21, 2005, that photographs of the door, taken on the day of the incident and admitted into evidence, "clearly show there is no crash bar on that door."

**3.** The defendant's motion to issue a subpoena duces tecum, granted on June 20, 2002 over the state's objection, read in pertinent part:

· "Defendant [seeks] to issue a subpoena to the social security administration for all medical records of the complainant, Delphine Garnetto. ·

"Upon information and belief, the complainant witness is receiving social security benefits. Defendant is not aware of how long Ms. Garnetto has been receiving disability benefits. For purposes of the issuance of this subpoena, defendant seeks the medical records from 1/1/1997 to the present date."

We are not called upon, in this appeal, to address the motion justice's order granting defendant's motion to issue the subpoena.

mony during trial concerning Ms. Garnetto's mental health was necessary because:

"[I]f she did not take her medication on that day * * * this could have led her to go off on that precise moment and attack my client. Because our contention is that she was the one that wielded the knife when she met him in the hallway that morning, that she waited for him, came out at the precise moment he was in the hallway and she was the one that attacked him with the knife and that he defended himself * * *."

The trial justice said that he would not allow a "fishing expedition," noting relevancy concerns under Rule 104 of the Rhode Island Rules of Evidence, but he reserved ruling on both motions until defense counsel provided authoritative case law.

The court again addressed the state's motions *in limine* on October 1, 2002, after the parties' opening statements. Defense counsel provided the trial justice with two opinions of this Court in *State v. Dorsey,* 783 A.2d 947 (R.I.2001), and *State v. Rice,* 755 A.2d 137 (R.I.2000). After hearing arguments from both sides, the trial justice decided to conduct a *voir dire* of Ms. Garnetto because "[s]he may be able to say she is on X, Y and Z for depression. She should be able to say what effect, if any, this has on her daily activities. I want to hear about them and then we will make a determination." During an extensive *voir dire,* Ms. Garnetto testified that she was on a prescription medication on September 8, 2001, but gave conflicting answers about whether she actually took the medication that day. Ms. Garnetto's testimony also was unclear about whether this medication was for depression, to aid in her effort to quit smoking, or both. In any event, Ms. Garnetto testified that she "felt fine" when she took the medication; and, when asked if the medication had any side effects, she answered "no." Based on this testimony, the court refused to allow inquiry into Ms. Garnetto's medication because it "would only confuse the jury and allow for rank speculation about what effect, if any, this medication or the lack of it would have on her state of mind." Furthermore, the court ruled that exposition concerning Ms. Garnetto's mental health, beyond asking only whether she received SSI, would "not [be] probative, relevant and material" to whether Ms. Garnetto was in fact the aggressor, as defendant argued.

After the trial, the jury returned verdicts of guilty on all of the four criminal information counts. On October 21, 2005, the trial justice heard and denied defendant's motion for a new trial, pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. The defendant was sentenced on December 16, 2002, after which he timely appealed.

## Standard of Review

■ This Court adheres to the oft-stated standard that "[t]he admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion." *State v. Lynch,* 854 A.2d 1022, 1031 (R.I.2004) (quoting *State v. Momplaisir,* 815 A.2d 65, 72 (R.I.2003)).

## Discussion

■ The defendant first contends on appeal that the trial justice erred by granting the state's motions *in limine* concerning "further *investigation or inquiry*" into the mental health status of Ms. Garnetto at the time of the incident. That inquiry, defendant argues, was vital to the theory that Ms. Garnetto was the aggressor and that defendant merely was acting in self-defense. The defendant asserts that infor-

mation concerning Ms. Garnetto's "mental illness," along with further inquiry into her medication, not only was relevant to defendant's self-defense posture, but also was essential to his "fundamental right to present a defense." The inability to cross-examine Ms. Garnetto in this regard, defendant would have us hold, stripped him of that right. We are unpersuaded, however, based upon the circumstances of this case, that the trial justice abused his discretion in granting the state's motions.

 The Confrontation Clause of the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution secure the right of cross-examination in all criminal matters. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Dorsey*, 783 A.2d at 950. "The right to cross-examine adverse witnesses provides the defendant with an opportunity to test the credibility and veracity of the witnesses' testimony." *Dorsey*, 783 A.2d at 950. This right, however, is subject to and therefore limited by the sound discretion of the trial justice, who may restrict the scope of counsel's cross-examination of a witness. *State v. Briggs*, 886 A.2d 735, 744–45 (R.I.2005); *State v. Sifuentes*, 649 A.2d 500, 502 (R.I.1994). After the trial justice has afforded an opportunity for sufficient cross-examination based on the dictates of both constitutional provisions, that justice "may certainly preclude by pretrial ruling pursuant to a motion in limine, or later during trial, that counsel's proposed line of questioning if it is not relevant to the trial issue, or if the proposed questioning, even if relevant, is outweighed by any of the reasons prescribed in Rule 403 of the Rhode Island Rules of Evidence." *State v. Oliveira*, 730 A.2d 20, 24 (R.I. 1999); *see also State v. Vento*, 533 A.2d 1161, 1164 (R.I.1987) (holding that the trial justice has "wide latitude" to impose limitations on further cross-examination under Rule 403). Importantly, when a defendant has put forward his or her theory of the case, the imposition of reasonable limitations on additional cross-examination does not impinge upon the constitutional guarantees referred to above. *Dorsey*, 783 A.2d at 950.

Contending that Ms. Garnetto's mental health status and medications were relevant, defendant sought to admit the hospital records of Ms. Garnetto's treatment for injuries she suffered in the incident on September 8, 2001, and evidence of her receipt of SSI benefits. The defendant asserts that the information he sought was highly probative of his defense because, defendant alleges, Ms. Garnetto was the aggressor and he acted out of self-defense. The defendant claims that this evidence might have indicated a propensity for violence because of an underlying psychiatric condition, or that she had failed to take prescribed medication, which in turn had caused her to "snap." After a *voir dire* examination of Ms. Garnetto, however, the trial justice found that she could not even recall the name of the antidepressant medication that she was prescribed. On ruling that counsel for Mr. Lorenzo would not be allowed to ask her what kind of medication she was taking, or what effect it had on her, the trial justice said, "without any medical foundation, it would be purely speculation to allow this jury to consider it." We agree.

Although not directly on point, we find congruent authority in *State v. Squillante*, 622 A.2d 474 (R.I.1993), a sexual-assault case involving the testimony of two medical experts. The defendant in *Squillante* sought to elicit testimony from two examining physicians, who found, before the date of the alleged sexual assault, that the defendant had been suffering from genital herpes, a sexually transmitted disease

marked by lesions on the genitalia. *Id.* at 481. The defendant argued that the physicians' testimony, in conjunction with evidence that the complainant did not suffer from genital herpes, could help exonerate the defendant by showing that sexual contact with the complainant was unlikely. *See id.* During a *voir dire* to address the state's motion *in limine,* both physicians testified that genital herpes was transmittable only at times when the virus is "shedding," indicated by the presence of open lesions on the genitalia; at all other times, the virus could not be contracted through sexual contact. *Id.* The trial justice granted the state's motion *in limine* because the physicians could not testify about whether the defendant was experiencing a period during which the virus would have been transmittable at the time of the assault. *Id.* In ruling upon the motion, the trial justice noted that it "would be purely speculative on the part of this jury to determine whether or not it accepts the information that there was sexual penetration or no sexual penetration because either the absence of herpes or the presence of herpes." *Id.* This Court affirmed, holding:

> "The relevance of such testimony was tenuous at best. It would have been of little help to the jury in deciding the issues in the case, could easily have mislead [*sic*] or confused the jury, and was properly excluded by the trial justice under Rule 403 of our rules of evidence." *Id.* at 482.

In the present case, supplemental to defendant's direct testimony of Ms. Garnetto's aggression on September 8, 2001, defendant sought to impeach Ms. Garnetto through evidence of her mental health status. Specifically, defendant suggested to the court that Ms. Garnetto's depression, along with the presence or absence of medication in her system on September 8, 2001, caused her to "snap" and assail defendant with drawn blade. After a *voir dire* on the matter, which took place after the court provided defense counsel with additional time to locate relevant case law, the trial justice granted the state's motions *in limine.* The vague and ambiguous testimony drawn from Ms. Garnetto, standing alone, failed to yield anything probative of her alleged aggression or otherwise exonerate defendant. The defendant failed, furthermore, to offer any expert testimony about whether Ms. Garnetto's depression or medication would have caused her to "snap," providing the court with even less information with which to determine relevancy than that in *Squillante,* 622 A.2d at 481–82. Without a greater showing of probative worth, the concern that further cross-examination of Ms. Garnetto's mental health status would serve merely to confuse or mislead the jury weighed heavily.

We are satisfied that the trial justice did not abuse his discretion by excluding further inquiry into the mental health of Ms. Garnetto. Throughout trial, defendant proceeded in a self-defense posture. The defendant was able to put forward his version of events before the jury, testifying that Ms. Garnetto was the aggressor and he the victim. The trial justice, however, reasonably restricted the scope of defendant's cross-examination by prohibiting inquiry into Ms. Garnetto's mental health status. In light of the circumstances of this case, we are not persuaded that this determination by the trial justice fell outside his wide discretion to limit defendant's cross-examination under Rule 403.

█ The defendant's next argument on appeal fails under the same relevancy rationale. During the direct examination of defendant, the trial justice sustained the state's objection to defense counsel's inqui-

ry into whether Ms. Garnetto displayed any "physical symptoms" during the course of their relationship. At sidebar, defense counsel argued unsuccessfully that defendant should be permitted to testify about Ms. Garnetto's "nervous behavior" and "symptomatology," manifested by her shaking hands. On appeal, defendant argues that the trial justice abused his discretion based on our holding in *State v. Tavarozzi*, 446 A.2d 1048, 1051 (R.I.1982), a case involving a defendant's claim of self-defense. There, we held that the trial justice improperly excluded evidence describing the defendant's "physical condition and demeanor" after her encounter with police because it was relevant to the issue of self-defense, *i.e.*, whether the police used excessive force in arresting the defendant. *Id.* On the contrary, based on the facts in the present case, defendant's observations of Ms. Garnetto's shaking hands during the course of their relationship is irrelevant to whether she was the aggressor on September 8, 2001. We are satisfied that the exclusion of such testimony was a sustainable exercise of the trial justice's discretion.

▮ As his final contention on appeal, defendant argues that the trial justice abused his discretion by disallowing an answer to a "follow-up question." Nearing the end of Ms. Garnetto's cross-examination, defense counsel inquired: "Then why in heaven's name would he stab you in the hallway on September the 8, 2001?" Sustaining the state's objection, the trial justice noted that, "[i]n a criminal case, the State does not have to prove motive. It is not necessary to prove a motive nor is it appropriate to ask this woman what the motive may be." Of course, we agree with the trial justice that, "the state in prosecuting a criminal case need not prove motive on the part of a defendant." *Oliveira*, 730 A.2d at 24. We also note that a defendant must be afforded " 'reasonable latitude' to inquire into the bias, motive or prejudice on the part of a witness," even though motive is not an element of the crime charged. *Briggs*, 886 A.2d at 745 (quoting *State v. Werner*, 831 A.2d 183, 209 (R.I.2003)). We need not continue upon this dialectic, however, because Rule 602 of the Rhode Island Rules of Evidence rendered defense counsel's query improper. Not having access to the inner workings of defendant's mind, and without any production of evidence "sufficient to support a finding that the witness has personal knowledge of the matter," Ms. Garnetto was incapable of describing defendant's motive for stabbing her beyond mere speculation or conjecture. *See* Rule 602. Although the record does not make clear the precise ground upon which the trial justice relied in finding the question inappropriate, we are satisfied that the trial justice did not abuse his discretion. *See State v. Rice*, 633 A.2d 253, 254 (R.I.1993).

▪ ▮ The defendant's remaining issues are waived pursuant to Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure. "Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Kaveny v. Town of Cumberland Zoning Board of Review*, 875 A.2d 1, 10 (R.I.2005) (quoting *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002)); *see also State v. Vorgvongsa*, 692 A.2d 1194, 1196–97 (R.I.1997) (applying Rule 16(a) in the criminal context). In this case, the defendant's written submissions included no citation to support his proposition that there were "[o]ther erroneous rulings" of the trial justice, leaving this Court to guess the legal theory upon which the defendant seeks

redress. We decline to decipher what the defendant's legal arguments may be, and, therefore, deem his remaining claims waived.

### Conclusion

For the reasons stated herein, the judgment of conviction is affirmed, and the record remanded to the Superior Court from whence it came.