**Sanford M. KIRSHENBAUM**

v.

**FIDELITY FEDERAL BANK, F.S.B.**

**No. 2007–86–Appeal.**

Supreme Court of Rhode Island.

Feb. 15, 2008.

Sanford M. Kirshenbaum, for Plaintiff.

Brent Canning, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Sanford M. Kirshenbaum, appeals to this Court from the entry of judgment in favor of the defendant, Fidelity Federal Bank, F.S.B. (Fidelity Bank).

This case came before the Supreme Court for oral argument on December 4, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

The material facts in this case are undisputed. In 1998, Mr. Kirshenbaum was

acting as a real estate broker on behalf of Lori and Johnatan Araujo, who were seeking to purchase a personal residence. Mr. Kirshenbaum was affiliated with Marlene Hope, Inc., a corporate entity located in Cranston.[1] With the assistance of plaintiff, the Araujos found a house located at 140 Vincent Avenue in North Providence that they wished to purchase. However, due to their poor credit history, the Araujos were unable to secure financing to purchase the property. To make possible the purchase of the property by the Araujos, plaintiff agreed to obtain a mortgage for the property in his own name. It appears that, in exchange, the Araujos agreed to make monthly payments to Mr. Kirshenbaum in the amount of the monthly mortgage payment.

To that end, on August 11, 1998, Mr. Kirshenbaum procured a mortgage in the amount of $54,000 from Pan American Bank and then proceeded to purchase the property in his own name for $67,500. On that same day, Ocwen Federal Bank, F.S.B., purchased the mortgage and promissory note; that purchase became effective on October 1, 1998. Subsequently, on October 22, 1998, defendant Fidelity Bank acquired the mortgage.

At some point between the date of the original mortgage (August 11, 1998) and its purchase by Fidelity Bank (October 22, 1998), Mr. Kirshenbaum conveyed title to the property to Marlene Hope, Inc., subject to the mortgage held by Ocwen Federal Bank, F.S.B. Thereafter, on April 9, 1999, Marlene Hope, Inc. conveyed title to the property to the Araujos, subject to the mortgage held by Fidelity Bank. In exchange for that transfer, the Araujos granted Marlene Hope, Inc. a second mortgage in the amount of $25,245.09.

On January 10, 2000, after Fidelity Bank discovered that title to the property had been transferred to the Araujos, it informed plaintiff that it was enforcing the "due on sale" provision in the mortgage. That provision provided that Fidelity Bank could seek immediate full repayment of the promissory note if plaintiff's ownership interest in the property should be transferred without its consent. The defendant notified Mr. Kirshenbaum that, if he did not fully repay the promissory note within thirty days, it would foreclose on the property. In an effort to prevent foreclosure, plaintiff requested additional time to pay off the loan; Fidelity Bank agreed to refrain from further action until June 30, 2000, during which time Mr. Kirshenbaum continued to make his regular monthly payments on the loan. On June 21, 2000, plaintiff sent a check to Fidelity Bank in the amount of $45,000.

Thereafter, on August 23, 2000, plaintiff sent a letter to Fidelity Bank; he enclosed in that letter a check in the amount of $4,460.93, which represented the remaining balance of the mortgage. In that same letter, plaintiff stated that he "wanted a discharge of the Mortgage and a notation on the Promissory Note that it was paid in full." He further indicated that it was his understanding that the Araujos were planning to declare bankruptcy and that, if he had "documents showing that the Note and Mortgage are paid, then the Araujos [would] not be liable for that amount."

In view of those considerations, in his August 23 letter Mr. Kirshenbaum insisted: (1) that the note be assigned to him personally and (2) that, pursuant to G.L. 1956 § 34–26–4, he "receive an assignment of the Mortgage, as opposed to a Dis-

1. It appears from the record that Marlene H. Kirshenbaum, plaintiff's daughter, is the president and sole shareholder of Marlene Hope, Inc., a Rhode Island corporation.

charge of the Mortgage."[2] Nonetheless, despite plaintiff's above-quoted request, on October 10, 2000, Fidelity Bank discharged the mortgage instead of issuing an assignment of the mortgage to Mr. Kirshenbaum.

Prior to that date, on September 14, 2000, the Araujos did in fact file for bankruptcy with the United States Bankruptcy Court of the District of Rhode Island. During the bankruptcy proceedings, the Araujos claimed that, since the mortgage had been discharged, any encumbrances on their property had been removed. Consequently, it was their argument that they were no longer obligated to make further payments to Mr. Kirshenbaum. Subsequently, on October 9, 2001, after finding that "the Araujos would be unjustly enriched by * * * the amount paid by [Mr.] Kirshenbaum to Fidelity [Bank] to satisfy the first mortgage on the Araujos' home, if their plan were confirmed as proposed," the Bankruptcy Court denied confirmation of the Araujos' bankruptcy plan.

Mr. Kirshenbaum then filed the instant action on December 4, 2001. He contended that, had Fidelity Bank granted him an assignment of the mortgage, he would have been able to pursue his claim against the Araujos for the amount he paid in order to discharge the mortgage. In his complaint, plaintiff claimed that he was entitled to damages equal to that amount ($53,460.93), plus interest, costs, and attorneys' fees. He further asserted that he was entitled to punitive damages because of defendant's failure to assign the note and mortgage to him in purported violation of §§ 34–26–4 and 34–26–5.[3] Subsequently, Fidelity Bank filed a motion for summary judgment, and a hearing was held with regard to same.

On September 13, 2005, the hearing justice issued a bench decision, in which she found that the plain language of § 34–26–4 did not entitle plaintiff to an assignment of the mortgage because the statute permits assignment of a mortgage only to a third party and not to the mortgagor. The hearing justice further noted that, pursuant to § 34–26–2, defendant was required to issue a discharge of the mortgage once it had been paid in full. The trial justice further determined that "even if the defendant had transferred the mortgage as the plaintiff requested, the plaintiff's status as an unsecured creditor of the Araujos would have been unchanged." Based on the foregoing conclusions, the hearing justice granted defendant's motion for summary judgment.[4] Final judgment was entered on September 14, 2005, and Mr. Kirshenbaum filed a timely appeal on September 30, 2005.

On appeal, plaintiff claims that the hearing justice's agreement with defense counsel's statement that the facts are "ridiculously convoluted" demonstrates that summary judgment was not appropriate in the instant case. The plaintiff also con-

---

**2.** It appears that Mr. Kirshenbaum's purpose in making the demand for an assignment was to ensure that the Araujos would still be indebted to him.

**3.** It appears from the record that Mr. Kirshenbaum did not file suit against the Araujos; rather, on January 10, 2002, he entered into a settlement agreement with them. In that agreement, plaintiff agreed to relinquish all claims against the Araujos in return for the agreement by the Araujos to convey the property back to Marlene Hope, Inc. and to release plaintiff from any tort claims associated with possible lead contamination of the property.

**4.** The hearing justice made several other rulings in support of her grant of summary judgment. Because we conclude that, based on the above-enumerated findings of the hearing justice, summary judgment was completely appropriate in the instant case, we need not address the other grounds upon which she predicated her decision.

tends that the discharge of the mortgage contained spelling and factual errors and that defendant could have assigned the mortgage to his wife instead of discharging the mortgage.

## Standard of Review

■ This Court reviews a hearing justice's decision as to summary judgment on a *de novo* basis. *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006); *DelSanto v. Hyundai Motor Finance Co.*, 882 A.2d 561, 564 (R.I.2005). In carrying out that review, we employ the same standards that the hearing justice employed. *Lacey*, 899 A.2d at 457. As such, we will affirm a grant of summary judgment if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that there are no genuine issues of material fact to be decided and that the moving party is entitled to judgment as a matter of law. *Id.; see also Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I. 2006).

## Analysis[5]

■ Mr. Kirshenbaum's first contention is that Fidelity Bank violated §§ 34–26–4 and 34–26–5 when it discharged his mortgage rather than granting him an assignment as he had requested. We disagree.

First and foremost, pursuant to § 34–26–2(a), it is legally mandated that "[e]very mortgagee of real estate * * * having received full satisfaction for the money due on the mortgage, *shall*, within thirty (30) days after final payment, discharge the mortgage * * *." (Emphasis added.) As such, we are in full agreement with the hearing justice's ruling that "defendant was required by statute to discharge the mortgage once plaintiff paid the debt in full."

■ Secondly, the clear terms of § 34–26–4 provide that an assignment of a mortgage may only be granted to a third party and not to the mortgagor. Section 34–26–4 provides in pertinent part as follows:
"Where a mortgagor is entitled to redeem, he or she shall by virtue of this section have power to require the mortgagee, instead of discharging or reconveying, and on the terms on which he or she would be bound to discharge or reconvey, to assign the mortgage debt and convey the mortgaged property to such *third person* as the *mortgagor directs* * * *." (Emphasis added.)

In view of the limited nature of this statutory provision, Fidelity Bank could not properly have assigned the mortgage to Mr. Kirshenbaum. As the hearing justice stated: "Indeed, permitting a transfer of the mortgage to the plaintiff would lead to an illogical result, one that would see the plaintiff as both mortgagor and mortgagee on the same note * * *."[6] Furthermore, in his letter to Fidelity Bank, Mr. Kirshenbaum confusingly requested both a discharge and an assignment, and he pro-

---

5. We note that, in opposing defendant's motion for summary judgment, plaintiff raised and addressed the legal issues dealt with in the "Analysis" section of this opinion; however, in his submission to this Court, plaintiff chose to set forth his contentions and reasoning in only the most cursory manner. *See Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions

raised * * *."); *see also Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 186 n. 23 (R.I.2008); *State v. Day*, 925 A.2d 962, 974 n. 19 (R.I.2007); *State v. Lorenzo*, 891 A.2d 864, 872–73 (R.I.2006); *O'Rourke v. Industrial National Bank of R.I.*, 478 A.2d 195, 198 n. 4 (R.I.1984). Nevertheless, in spite of plaintiff's regrettable failure to adhere to appellate requirements, we have chosen in this instance to address his arguments.

6. We also observe that, even if defendant was required to assign the mortgage to plaintiff, it

vided no information concerning the person(s), other than himself, to whom the assignment should be directed. Mr. Kirshenbaum's argument on appeal that the assignment could have been made to his wife is of no present consequence; the plain and inexorable fact is that he made no such request.

■ Finally, plaintiff's contention that summary judgment was inappropriate because the facts are "ridiculously convoluted"[7] is utterly devoid of merit. The very nature of our judicial system requires courts to confront cases that touch on virtually every aspect of our society; and, in so doing, judges often must deal with extremely difficult and intricate factual questions. There is no necessary correlation between the "convoluted" nature *vel non* of a case's factual background and the appropriateness of disposition pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. It is the duty of the courts, when presented with a motion for summary judgment, to determine whether or not material issues of fact remain to be resolved, and, if not, whether judgment should be granted as a matter of law. *See McPhillips v. Zayre Corp.*, 582 A.2d 747, 749 (R.I.1990). As a perusal of decided cases reveals, that duty can be (and often is) carried out even when the factual background is "convoluted." *See, e.g., Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 668–69 (R.I.2004) (upholding the grant of summary judgment even though there were complex factual issues concerning a bank's practices with respect to credit card solicitations); *Holliston Mills, Inc. v. Citizens Trust Co.*, 604 A.2d 331, 332–34 (R.I. 1992) (upholding the grant of summary judgment in a case involving the terms of a complicated and intricate loan agreement).

Although the facts in this case may be somewhat "convoluted," there has been no showing that any material facts are in dispute. In its pre-briefing statement filed with this Court,[8] the defendant stated that it does not take "issue with the facts as recited by [the hearing justice] in her September 13, 2005 decision." The plaintiff's recitation of the facts is also virtually identical to the description of the facts made by the hearing justice and by the defendant. Summary judgment was completely appropriate in this case; there were not any material facts at issue and, as discussed above, the defendant was entitled to judgment as a matter of law.

### Conclusion

For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court. The papers in the case may be remanded to the Superior Court.

---

would not have provided any security for plaintiff in seeking recovery from the Araujos. The clear terms of the mortgage held by defendant state that the mortgage secured plaintiff's obligation to repay his loan to defendant; it did not provide security for the Araujos' obligations to plaintiff.

7. We note that the quoted descriptive language (with which the trial justice agreed) was made by defense counsel; it referred to one particular issue—*viz.*, the issue of whether or not the Araujos had signed a promissory note with plaintiff. At no point was that descriptive language used with respect to the case as a whole.

8. The *"Statement of the Case"* that is called for by Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure is commonly referred to as a *"pre-briefing statement."* Rule 12A(1) provides in pertinent part as follows: "[T]he appellant, petitioner, or other moving party shall file a statement of the case and a summary of the issues proposed to be argued * * *."