March 11, 2019

**Supreme Court**
No. 2018-22-Appeal.
(PC 07-5714)

Thomas Shannahan et al.　　　　　:

v.　　　　　　　　　　　　　　:

Charles D. Moreau et al.　　　　　:

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Thomas Shannahan et al.        :

            v.                 :

Charles D. Moreau et al.       :

Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   In this action, which involves various allegations against Charles D. Moreau (Moreau), the former mayor of the City of Central Falls, the plaintiffs, Thomas Shannahan (Shannahan), Thomas Wilson (Wilson), Donald D. Twohig (Donald D.), and the Estate of Donald P. Twohig (Donald P.) (collectively plaintiffs),[1] appeal from the grant of summary judgment in favor of the defendant, The Rhode Island Interlocal Risk Management Trust (the Trust).[2]   This matter came before the Court on January 15, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.  After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown.  Thus, further argument or briefing is not required to decide this matter.  For the reasons outlined below, we affirm the judgment of the Superior Court.

---

[1] Because two of the plaintiffs in this case are named "Donald Twohig," we will refer to each by their first name and middle initial. No disrespect is intended.

[2] Pursuant to a consent order entered in 2013, Moreau was dismissed from this case. Additionally, pursuant to that order, the insurer for the City of Central Falls, The Rhode Island Interlocal Risk Management Trust, was substituted as a party defendant for the city. The Trust is the only remaining defendant in this case.

# I

## Facts and Travel

Today we close the book on what was a sad and scandal-plagued chapter in the history of the City of Central Falls (the city or Central Falls). The facts of this litigation, which has persisted for over fifteen years, are as follows. In 2003, Moreau ran as a candidate for mayor of Central Falls against the then-incumbent mayor, Lee Matthews (Matthews). During his campaign, Moreau stated several times that, should he win, he would seek to remove Wilson from Wilson's position as the chief of the Central Falls Police Department.[3] Moreau also became aware that plaintiffs had, in one form or another, supported Matthews' re-election efforts.[4] Eventually, the campaign culminated in a victory for Moreau in November 2003, and he was sworn in as the mayor of the city on January 5, 2004. Prior to Moreau taking office, however, in December 2003, in response to Moreau's previous threats, Wilson filed for injunctive relief in the United States District Court for the District of Rhode Island (the District Court) to prevent Moreau from removing him from his position. *See Wilson v. Moreau*, 440 F. Supp. 2d 81, 86 (D.R.I. 2006). In a stipulation entered in that case on December 19, 2003, the parties agreed that "the [District Court] case would be held in abeyance for 120 days, at which point the case would be dismissed without prejudice if Moreau had not taken any adverse employment action against Wilson during that time period." *Id.*

---

[3] Wilson, who was appointed to the position of chief of police by Matthews in 2003, was the former deputy chief of police in the City of Warwick. In the October 30, 2003 edition of *The Pawtucket Times*, Moreau was quoted as stating: "Chief Wilson is a great guy, but I'd replace him and it wouldn't be hard because he's working without a contract"; "We need to address the problems better"; and "[Wilson] leaves every day at 4 p.m. and heads home to Warwick, so while people are being beat up on Broad and Dexter streets at night, he's on the couch. Why was he even hired?" *Wilson v. Moreau*, 440 F. Supp. 2d 81, 86 (D.R.I. 2006).

[4] Plaintiffs also claim that Moreau requested Shannahan's support during the campaign and that Shannahan refused.

During the first few months of his troubled tenure, Moreau's relationship with Wilson was tense. *See Wilson*, 440 F. Supp. 2d at 86. On several occasions, Moreau, in his capacity as the city public safety director, called meetings with Wilson's subordinates without including Wilson. *Id.* In March 2004, Moreau suspended Wilson, without pay, for insubordination, publicly citing Wilson's abuse of vacation and leave time as the rationale for such suspension. *Id.* at 87. Moreau was quoted in several newspapers at the time regarding this incident, faulting Wilson for attending out-of-state conferences in Kansas and Connecticut without permission from the city.[5] *Id.* at 86-87. Later, Moreau ordered Wilson to bring his city-owned vehicle to city hall because Moreau wanted to trade vehicles with him. *Id.* at 87. Upon Wilson's arrival, Moreau took possession of Wilson's car and told Wilson that his replacement car was not yet ready. *Id.* Wilson eventually received another vehicle—"a rusted old car." *Id.*

While in office, Moreau also engaged in public spats with Shannahan, Donald P., and Donald D. *See Wilson*, 440 F. Supp. 2d at 87-88. Shannahan and Donald D. were city employees working at the Adams Library in Central Falls,[6] as a librarian and a systems administrator, respectively; Donald P. was not an employee of the city, but he worked at the library as an independent contractor. *Id.* at 87, 88. In January 2004, the city stopped all payments to Donald P. for seven weeks, due to his purported failure to obtain the proper registration card and insurance. *Id.* at 87. Donald P. alleges that Moreau had also placed a padlock on a shed near the library where Donald P. had kept his work tools.[7] Around that same time, without informing Wilson, Moreau ordered a police investigation into the larceny of certain blank checks from Donald P.'s home in Smithfield, Rhode Island, despite the fact that the Smithfield police had

---

[5] Wilson claimed that he had obtained approval from the Moreau administration to attend these conferences.

[6] The Adams Library is a privately owned building that is staffed by city employees.

[7] This alleged act forms the basis of Donald P.'s conversion claim in Count VII of the complaint.

already concluded that Donald P. was the victim of that crime. *Id.* at 88.  Moreau also publicly questioned the library's payment of nearly $400,000 to Donald P. for non-bid work over a six-year period, and Moreau was quoted in the April 22, 2004 edition of *The Pawtucket Times* as stating: "Tom Shannahan has done a great job, but it appears the purchasing procedure has been circumvented.  We're bringing that to light. Policies have to be followed." *Id.* at 87, 112.

On April 12, 2004, citing the poor treatment of his staff under the Moreau administration, Shannahan announced that he would be stepping down from his position as librarian of the Adams Library at the end of that month. *Wilson*, 440 F. Supp. 2d at 88.  Then, on April 20, 2004, acting on a tip from a former mayor of Central Falls that Matthews had run his campaign out of the Adams Library, Moreau ordered the police department to conduct a search of the library. *Id.* During this search, the police focused their efforts on Donald D.'s computer, even going so far as to delve into his personal email account.[8] *Id.*  When Shannahan contacted Wilson to find out what was going on, Wilson replied that he had not been informed of the raid. *Id.* at 89.  For his part, Wilson, as chief of police, sought a determination from the Rhode Island Department of the Attorney General regarding whether the raid was legal. *Id.* After being informed that there was no basis for a criminal investigation and finding no evidence of criminality, and despite orders from Moreau to the contrary, Wilson declined to pursue the library investigation further. *Id.*

Eventually, in early May 2004, Moreau sent a letter to Wilson explaining that Moreau was considering removing Wilson from his position as chief of police because of Wilson's failure to investigate alleged violations of the city charter at the Adams Library. *Wilson*, 440 F.

---

[8] In an article that ran in *The Pawtucket Times* on April 22, 2004, Moreau stated that the police had found materials supporting Matthews on the computer and that Moreau's legal team was conducting an investigation into the matter. The article read, in part: "[Detective] Brayall, Moreau said, pulled three documents from [Donald D.'s] files in [Donald D.'s] computer, all of them letters written for the Matthews campaign. Several hours later, those files were gone from the computer, Moreau said."

Supp. 2d at 89. In response, Wilson obtained a temporary restraining order from the District Court to delay any action in this regard, which led Moreau to suspend Wilson, with pay, for an indefinite period of time.[9] *Id.* at 89-90. On May 12, 2004, Wilson resigned in light of his ongoing contentious relationship with Moreau. *Id.* at 90.

On May 24, 2004, Wilson amended his complaint in the District Court to include Shannahan, Donald P., and Donald D. as plaintiffs. *Wilson*, 440 F. Supp. 2d at 90. The complaint alleged twelve counts, including constitutional claims for violations of the right to substantive and procedural due process and to equal protection, violations of the Charter of the City of Central Falls, and claims under 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.* at 90, 92, 93, 101, 108-09, 110, 111. The plaintiffs also brought Rhode Island state law claims for defamation, invasion of privacy, intentional infliction of emotional distress, and computer trespass. *Id.* at 111. After the grant of summary judgment in favor of the defendants on several counts, only two federal claims brought by Donald P. and Donald D., as well as the state law claim for computer trespass by Donald D., survived. *Id.* at 117. However, the remaining federal claims were then resolved in favor of the defendants at or after trial. *Wilson v. Moreau*, 492 F.3d 50, 52 (1st Cir. 2007). Because the federal claims by Wilson and Shannahan did not withstand summary judgment review, the District Court declined to exercise pendent jurisdiction over their claims brought under state law, dismissing them without prejudice. *Wilson*, 440 F. Supp. 2d at 111-12. The District Court judgment became final after the First Circuit heard and denied plaintiffs' appeal on June 29, 2007. *Wilson*, 492 F.3d at 54.

---

[9] The city had also scheduled a pre-termination hearing for Wilson, which did not take place; a hearing in the District Court was scheduled on a preliminary injunction, but Wilson resigned and that hearing was canceled. *Wilson*, 440 F. Supp. 2d at 90.

After the dust had settled following the resolution of the federal case, plaintiffs filed the instant action in Providence County Superior Court on October 26, 2007. The complaint, which was subsequently amended, alleged seven causes of action against Moreau and the city under Rhode Island state law: defamation (Count I); invasion of privacy based on false light and public disclosure of private facts (Count II); intentional or negligent infliction of emotional distress (Count III); intentional interference with contract/economic advantage (Count IV); invasion of privacy based on intrusion upon privacy and seclusion (Count V); civil conspiracy (Count VI); and conversion (Count VII).[10]

The city filed for bankruptcy in 2011, and a state-appointed receiver was designated to oversee the city's finances. Later, in September 2013, the Superior Court entered a consent order dismissing Moreau as a party defendant and substituting the Trust as defendant on behalf of the city, leaving "the City of Central Falls, through [t]he Trust as a substituted Defendant * * * the only remaining Defendant in the action[.]" The consent order also stated that the Trust would retain "all defenses that would have been available to the [city], both statutorily and otherwise[.]"

On February 26, 2016, the Trust filed two motions for summary judgment, one pertaining to the old claims, while the other focused on the new claims.[11] In opposition to the motions, plaintiffs submitted fourteen volumes of depositions, along with a memorandum of law in

---

[10] The parties refer to the first three counts (for defamation, invasion of privacy, and intentional or negligent infliction of emotional distress) as "the old claims" because they had first been brought in federal court in 2004. In the instant case, these claims were brought solely by Wilson and Shannahan, as Donald P. and Donald D. had these causes of action fully adjudicated in federal court. For ease of reference, we will similarly refer herein to Counts I through III collectively as "the old claims." Counts IV, V, and VI (for interference with contract, invasion of privacy and conspiracy) were brought by all plaintiffs. Count VII (for conversion) was brought exclusively by Donald P. The parties refer to Counts IV through VII, collectively, as "the new claims" because these claims were not brought in federal court. For ease of reference, we will similarly refer to Counts IV through VII collectively as "the new claims."

[11] The Trust explained that this was done in order to aid the hearing justice in managing the numerous claims involved.

support of their opposition. A hearing on the summary-judgment motions was held on December 1, 2016. The Trust first argued that the new claims were barred by the doctrine of *res judicata* or, in the alternative, that they were barred by the statute of limitations for tort actions against cities and towns contained in G.L. 1956 § 9-1-25.[12] The Trust asserted that it had not waived the statute of limitations defense because the Trust had raised the defense in its answers to both the original and amended complaints in Superior Court and had pressed the statute of limitations issue prior to trial.

With regard to the old claims, the Trust first averred in support of summary judgment that plaintiffs had not put forth any admissible evidence that Moreau had committed the alleged torts within the scope of his employment with the city. The Trust further contended that these acts, as alleged by plaintiffs, were born out of a "personal political vendetta" propagated by Moreau and therefore could not be imputed to the city. Turning to plaintiffs' claim of negligent infliction of emotional distress, the Trust argued that plaintiffs did not fall into either of the two classes of persons who may maintain a cause of action for that tort. On the claim of intentional infliction of emotional distress, the Trust averred that plaintiffs had failed to prove that Moreau's conduct was extreme and outrageous. The Trust next asserted that the defamation claims failed as a matter of law because: (1) plaintiffs failed to submit admissible evidence in support of the

---

[12] General Laws 1956 § 9-1-25 provides:

> "When a claimant is given the right to sue the state of Rhode Island, any political subdivision of the state, or any city or town by a special act of the general assembly, or in cases involving actions or claims in tort against the state or any political subdivision thereof or any city or town, the action shall be instituted within three (3) years from the effective date of the special act, or within three (3) years of the accrual of any claim of tort. Failure to institute suit within the three (3) year period shall constitute a bar to the bringing of the legal action."

claims; (2) the statements were not false or defamatory; (3) some of the statements were made before Moreau was inaugurated; (4) plaintiffs were public figures; and (5) Moreau was entitled to absolute and qualified privilege.

The plaintiffs replied, in opposition to summary judgment, that the Trust's statute-of-limitations and *res judicata* arguments should have been litigated at an earlier time, and that summary judgment was not appropriate at that moment. While being peppered with questions from the hearing justice, plaintiffs proclaimed that the statute-of-limitations defense had been waived because, even though the limitations defense had been included in defendants' answers to plaintiffs' original and amended complaints, the city had not pressed the defense during the entirety of the case.[13] The plaintiffs then claimed that, even if not required by the Superior Court Rules of Civil Procedure, the Trust should have included an undisputed statement of facts with its motions for summary judgment. The hearing justice replied, stating that it was plaintiffs' burden to show an issue of material fact and that all that plaintiffs had offered was "a stack of depositions about two-feet high with a memo that said because this case is so complicated, summary judgment should not issue." The plaintiffs replied that the depositions of Moreau and the newspaper articles, as a whole, created issues of material fact; but, when pressed, they could not recite which portions of those documents supported their claims.[14] Furthermore, plaintiffs claimed that Moreau's statements and actions were made in the course of his employment because, as mayor, he set the policy of the city. In conclusion, plaintiffs requested that the court

---

[13] The plaintiffs' attorney admitted that the new claims "stand on a weaker legal foundation than the first ones" with regard to the statute of limitations.

[14] The plaintiffs' counsel also seemed to concede at the hearing that the newspaper articles that plaintiffs had submitted in support of their opposition to the Trust's motions for summary judgment were precluded under the hearsay rule.

look at the totality of the evidence to find that genuine issues of material fact existed as to their claims.

The hearing justice issued a bench decision on August 1, 2017.[15] The hearing justice first noted that plaintiffs had simply offered a blanket objection to the motions for summary judgment, in which they stated generally that there were genuine issues of material fact that should prevent the entry of summary judgment. The hearing justice found at the outset that plaintiffs' lack of objection alone provided a basis for her to grant summary judgment, but she nevertheless reviewed the substance of the motions. In doing so, she went on to decide each of plaintiffs' claims individually. The hearing justice determined that the new claims of Donald P. and Donald D. in Counts IV through VII were barred by *res judicata* because the federal courts had fully adjudicated the claims by those plaintiffs, and the new claims could have been brought by Donald P. and Donald D. in the federal case but were not. However, she decided that the claims brought by Wilson and Shannahan were not barred by *res judicata*, because the District Court had dismissed their claims without prejudice.

The hearing justice next turned to the Trust's statute-of-limitations argument. She stated that the old claims of Wilson and Shannahan were timely because the statute of limitations was tolled during the pendency of the District Court litigation. Nevertheless, the hearing justice noted that there was no tolling for their new claims, Counts IV through VI. Next, the hearing justice reviewed the new claims and determined that the last actionable event (Donald D.'s termination) occurred on August 10, 2004, and that, therefore, the statute of limitations under § 9-1-25 had run on August 10, 2007. She concluded that, because they had not filed their action

---

[15] While it appears from a review of the dockets in this case that a transcript of the August 1, 2017 bench decision was not filed in the Superior Court or in this Court, a copy was appended to plaintiffs' brief.

until October 26, 2007, the new claims by Wilson and Shannahan were barred by the statute of limitations.

The hearing justice indicated that the discovery materials that plaintiffs had provided demonstrated that Moreau may have been acting within the scope of his employment with the city. Even though the hearing justice noted that it was plaintiffs' obligation to draw the hearing justice's attention to specific evidence to counter the Trust's motions for summary judgment, she performed an exhaustive review of the fifty-one newspaper articles, as well as a cable television program transcript, that plaintiffs had submitted along with their memorandum in support of their objection to the motions for summary judgment. She found that twelve of the articles referred to statements that Moreau had made before his inauguration, all of which therefore could not be imputed to the city. The hearing justice concluded, after looking at the alleged defamatory statements that occurred during Moreau's tenure as mayor that, as a matter of law, none qualified as being defamatory. She also reasoned that Moreau had qualified immunity when he made those statements because they were all regarding matters of public concern. The hearing justice noted that plaintiffs had failed to meet their burden of establishing that Moreau had acted with malice, which was a requirement to overcoming the qualified privilege that Moreau enjoyed. Because she determined that none of Moreau's statements could be construed as defamatory, the hearing justice granted the Trust's summary-judgment motion as to Count I.

The hearing justice likewise granted summary judgment as to Count II because plaintiffs had not demonstrated a material issue of fact as to how Moreau had placed them in a false light. The hearing justice further decided that summary judgment was also appropriate as to Count III. She found that the claim of negligent infliction of emotional distress was unavailing because Wilson and Shannahan were not within the two classes of persons who may maintain an action

- 10 -

for that tort under Rhode Island law. Furthermore, the hearing justice reasoned that Wilson and Shannahan could not recover on a claim for intentional infliction of emotional distress because they had not proven that Moreau's conduct went beyond the bounds of conduct tolerated in a civilized society and also because plaintiffs had not alleged physical injury.

On September 6, 2017, an order entered granting summary judgment in favor of the Trust on all counts, and final judgment entered in favor of the Trust. The plaintiffs timely appealed to this Court on September 25, 2017.

## II

### Standard of Review

"A motion for summary judgment 'is designed to decide in an expeditious fashion cases presenting groundless claims.'" *Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, 199 A.3d 1034, 1038 (R.I. 2019) (deletion omitted) (quoting *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 487, 261 A.2d 19, 21 (1970)). "When we review a hearing justice's grant of a motion for summary judgment, we conduct our analysis *de novo*." *Id.* "If we determine that 'there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law,' then we will affirm the grant of the motion." *Id.* (alteration omitted) (quoting *Sisto v. America Condominium Association, Inc.*, 68 A.3d 603, 611 (R.I. 2013)). "In this endeavor, 'we view the evidence in the light most favorable to the nonmoving party.'" *Id.* (alteration omitted) (quoting *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1109 (R.I. 2014)). "However, once the moving party establishes 'the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided.'" *Id.* (quoting *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065, 1066 (R.I. 1989)). "The party opposing the motion cannot establish a genuine

issue of fact merely by resting on denials in its pleadings. *Id.* Rather, the opposing party must 'respond with specific facts that would constitute a genuine issue for trial.'" *Id.* (quoting *Volino v. General Dynamics*, 539 A.2d 531, 533 (R.I. 1988)).

## III

## Discussion

In their papers to this Court, plaintiffs aver that "there are numerous facts alleged and denied by the Trust which demand adjudication[,]" but they do not direct our attention to what those facts might be. The plaintiffs' first and overriding contention for overturning the hearing justice's decision is their assertion that the complexity of this case precluded consideration of the Trust's motions for summary judgment. While we agree that this case does display a certain level of complexity—with four plaintiffs and twenty-two claims—we find this argument to be without merit.

In *Kirshenbaum v. Fidelity Federal Bank, F.S.B.*, 941 A.2d 213 (R.I. 2008), we held that "[the] plaintiff's contention that summary judgment was inappropriate because the facts are 'ridiculously convoluted' is utterly devoid of merit." *Kirshenbaum*, 941 A.2d at 218 (footnote omitted). There, we explained that

> "[t]he very nature of our judicial system requires courts to confront cases that touch on virtually every aspect of our society; and, in so doing, judges often must deal with extremely difficult and intricate factual questions. There is no necessary correlation between the 'convoluted' nature *vel non* of a case's factual background and the appropriateness of disposition pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. It is the duty of the courts, when presented with a motion for summary judgment, to determine whether or not material issues of fact remain to be resolved, and, if not, whether judgment should be granted as a matter of law. As a perusal of decided cases reveals, that duty can be (and often is) carried out even when the factual background is 'convoluted.'" *Id.* (internal citations omitted).

Accordingly, we hold that the complex nature of the case at bar alone did not preclude the hearing justice from considering the Trust's summary-judgment motions.

Next, plaintiffs argue that the hearing justice erred in rendering a decision while biased. This argument is similarly without merit because plaintiffs "neither moved for recusal nor raised the alleged issue of bias on the record * * *." *Huntley v. State*, 109 A.3d 869, 874 (R.I. 2015). Thus, under this Court's well-settled raise-or-waive rule, we deem this argument waived.[16] *See id.*

## A

### The New Claims

### 1

### *Res Judicata*

We now address plaintiffs' contention that summary judgment was not appropriately granted in this case. We deal first with the preclusive effect of the District Court judgment in *Wilson* with respect to plaintiffs' new claims in Counts IV through VII.[17] Under Rhode Island law, claim preclusion, or *res judicata*, "serves as a bar to a second cause of action where there exist: (1) identity of parties; (2) identity of issues; and (3) finality of judgment in an earlier action." *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1126 (R.I. 2018) (quoting *Torrado Architects v. Rhode Island Department of Human Services*, 102 A.3d 655, 658 (R.I. 2014)).

---

[16] In any event, we are satisfied that the hearing justice was not at all biased in rendering her decision. At worst, the hearing justice was frustrated at counsel's inability to point to specific evidence in the record to support the denial of the motions for summary judgment. However, the hearing justice clearly scoured the record to find triable issues of fact to aid plaintiffs—as evidenced by her thorough decision, which spanned forty-two transcript pages.

[17] Although plaintiffs' counsel seemed to concede at oral argument before this Court that *res judicata* barred the new claims of Donald P. and Donald D., we shall nonetheless conduct our own review to give their claims in Counts IV through VII due consideration.

First, "[d]etermining whether there is 'identity of parties' requires resolving 'whether the parties to this second action are identical to or in privity with the parties involved in the prior action.'" *Reynolds v. First NLC Financial Services, LLC*, 81 A.3d 1111, 1115 (R.I. 2014) (alteration omitted) (quoting *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I. 1994)). "Privity exists where there is 'a commonality of interests' such that one party adequately represents the other's interests." *Huntley v. State*, 63 A.3d 526, 531 (R.I. 2013) (alteration omitted) (quoting *Lennon v. Dacomed Corp.*, 901 A.2d 582, 591 (R.I. 2006)). Here, all four plaintiffs were involved in the federal case; therefore it is clear that there is identity of parties on the plaintiffs' side. Additionally, while the Trust was not involved in the federal case, the Trust is in privity with the city, which was a party to the federal case, because, as the city's insurer, the Trust is directly representing the interests of the city. Also, pursuant to the consent order entered in the Superior Court, the Trust has retained all defenses that the city would have had in the instant matter. Therefore, the first requirement for the application of *res judicata*, identity of the parties, is satisfied here.

Second, "[t]his Court has adopted the transactional rule governing the preclusive effect of the doctrine of *res judicata*." *Goodrow*, 184 A.3d at 1127 (deletion omitted) (quoting *Bossian v. Anderson*, 991 A.2d 1025, 1027 (R.I. 2010)). "The transactional rule provides that all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action." *Id.* (quoting *Bossian*, 991 A.2d at 1027). "What constitutes a transaction or a series of connected transactions is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* (deletion omitted) (quoting *Town of*

*Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1036 (R.I. 2017)). Here, it is clear that the new claims arose out of the same set of facts that plaintiffs relied upon when they brought the old claims in federal court—namely, Moreau's actions during the first few months of his tenure as the mayor of Central Falls. Therefore the second requirement for *res judicata*, identity of the issues, is satisfied here.

"Finally, the application of *res judicata* requires that there be finality of judgment in the earlier action." *Goodrow*, 184 A.3d at 1128 (quoting *Reynolds*, 81 A.3d at 1116). Because all of the claims of Donald P. and Donald D. in the federal court resulted in a final judgment—either through the grant of a motion for summary judgment or a jury verdict in favor of the city—the third and final requirement for the application of *res judicata*, finality of judgment, is satisfied as to Donald P. and Donald D. Accordingly, we agree with the hearing justice's determination that the new claims are barred by the doctrine of *res judicata* as to Donald P. and Donald D. and that summary judgment was therefore appropriately granted as to their claims in Counts IV through VII.

Likewise, we agree with the hearing justice's determination that *res judicata* does not bar the new claims in Counts IV through VI by Wilson and Shannahan. Although "a dismissal, with prejudice, constitutes a final judgment on the merits[,]" *Goodrow*, 184 A.3d at 1128 (alteration omitted), a dismissal, without prejudice, does not. In the federal court action, the District Court declined to exercise pendent jurisdiction over the state claims by Wilson and Shannahan because their federal claims had been disposed of by the grant of a motion for summary judgment before trial. *Wilson*, 440 F. Supp. 2d at 111. As the District Court stated, its dismissal of the state-law claims was without prejudice. *Id.* at 112. Therefore, we hold that the doctrine of *res judicata* does not bar the new claims by Wilson and Shannahan.

**2**

**Statute of Limitations**

Although the new claims by Wilson and Shannahan are not barred by the application of *res judicata*, they were not timely made. In her bench decision, the hearing justice applied § 9-1-25, which provides for a three-year statute of limitations for claims sounding in tort against a city or town in Rhode Island, to the new claims. The hearing justice first determined that the Trust, through the city, had properly raised the statute-of-limitations defense in its answer, and, thus, the defense had not been waived. Next, she determined that the last possible date of accrual of any cause of action in this matter occurred on August 10, 2004, when Donald D.'s employment was terminated. Because the instant case was filed on October 26, 2007, more than three years after the causes of action for Wilson and Shannahan had accrued, we hold that § 9-1-25 applies to bar the new claims of Wilson and Shannahan and that the hearing justice properly granted summary judgment on this basis in favor of the Trust on Counts IV through VI of plaintiffs' complaint as to Wilson and Shannahan.

**B**

**The Old Claims**

**1**

**Negligent and Intentional Infliction of Emotional Distress**

Regarding the old claims by Wilson and Shannahan, in Counts I through III, we deal first with their claims for negligent and intentional infliction of emotional distress. First, with respect to negligent infliction of emotional distress, "[i]t is well settled that 'only two classes of persons may bring claims for negligent infliction of emotional distress: those within the zone-of-danger who are physically endangered by the acts of a negligent defendant, and bystanders related to a

victim whom they witness being injured.'" *Gross v. Pare*, 185 A.3d 1242, 1246 (R.I. 2018) (internal alteration and quotations omitted) (quoting *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 710 (R.I. 2003)).

Putting aside for a moment the fact that plaintiffs claim that Moreau's acts were *intentional* rather than negligent, the claims by Wilson and Shannahan for negligent infliction of emotional distress must fail as a matter of law because Wilson and Shannahan have put forth no evidence that they either: (1) were in a zone of *physical* danger from Moreau's words or actions; or (2) saw a close relative negligently injured by Moreau's words or actions. *See Gross*, 185 A.3d at 1246-47. Accordingly, we hold that the hearing justice appropriately granted summary judgment in favor of the Trust on the claims by Wilson and Shannahan for negligent infliction of emotional distress.

Second, regarding claims of intentional infliction of emotional distress, under Rhode Island law:

> "In order to impose liability on a defendant for intentional infliction of emotional distress: '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be *extreme and outrageous*, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Gross*, 185 A.3d at 1245-46 (emphasis in original) (quoting *Swerdlick v. Koch*, 721 A.2d 849, 862 (R.I. 1998)).

"Furthermore, 'this Court has required at least some proof of medically established physical symptomatology for both intentional and negligent infliction of mental distress.'" *Id.* at 1246 (quoting *Swerdlick*, 721 A.2d at 863).

While we might agree with plaintiffs that some of Moreau's actions arguably border on outrageous—such as taking Wilson's city-issued car and replacing it with a rusted old car, as

- 17 -

well as ordering a raid on the Adams Library based on a tip—this claim still fails. The plaintiffs did not put forth any evidence of physical symptomatology resulting from the alleged extreme and outrageous conduct by Moreau such that they have established any factual issue on this necessary element of an intentional infliction of emotional distress claim. Therefore, we hold that the hearing justice was correct in granting summary judgment in favor of the Trust on Count III of plaintiffs' complaint.

## 2

### Public Disclosure of Private Facts and False Light

Next, Wilson and Shannahan bring claims for public disclosure of private facts[18] and false light,[19] under § 9-1-28.1. "In examining what constitutes a 'private fact,' this Court has determined that 'the plaintiffs must demonstrate that they actually expected a disclosed fact to

---

[18] Section 9-1-28.1(a)(3), which creates the cause of action for public disclosure of private facts, states:

> "(i) In order to recover for violation of this right, it must be established that:
> > "(A) There has been some publication of a private fact;
> > "(B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities;
> "(ii) The fact which has been disclosed need not be of any benefit to the discloser of the fact."

[19] Section 9-1-28.1(a)(4), which creates the cause of action for false light, provides:

> "(i) In order to recover for violation of this right, it must be established that:
> > "(A) There has been some publication of a false or fictitious fact which implies an association which does not exist;
> > "(B) The association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances;
> "(ii) The fact which was disclosed need not be of any benefit to the discloser."

remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it.'" *Swerdlick*, 721 A.2d at 858 (alteration omitted) (quoting *Pontbriand v. Sundlun*, 699 A.2d 856, 865 (R.I. 1997)). "To prevail in an action [for false light], a plaintiff must prove that 'there has been some publication of a false or fictitious fact which implies an association which does not exist; and the association which has been published or implied would be objectionable to the ordinary reasonable person under the circumstances.'" *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 752 (R.I. 2004) (alterations omitted) (quoting *Cullen v. Auclair*, 809 A.2d 1107, 1112 (R.I. 2002)).

In their opposition to the Trust's motions for summary judgment, as well as in their papers submitted to this Court on appeal, plaintiffs do not direct us specifically to any evidence that would create a genuine issue of material fact regarding how Moreau placed them in a false light or unreasonably disclosed private facts about them through his words or actions. As we have often stated, "[a] party who opposes summary judgment has a duty to establish that a genuine issue of material fact exists and may not rest solely upon allegations and denials in the pleadings." *Urena v. Theta Products, Inc.*, 899 A.2d 449, 452 (R.I. 2006). The plaintiffs' opposition to the Trust's motions for summary judgment essentially stated that there were material issues of fact contained in the voluminous discovery materials that they placed before the hearing justice, but they did not point out what those facts were or where in the record the facts were contained. In essence, they relied on allegations and denials in the pleadings to carry them past the Trust's motions for summary judgment. This is not enough to meet plaintiffs' burden of establishing that a genuine issue of material fact exists. Accordingly, we hold that the hearing justice appropriately granted summary judgment in favor of the Trust on Count II of plaintiffs' complaint.

**3**

**Defamation**

Having disposed of plaintiffs' other claims, we arrive at the defamation claims brought by Wilson and Shannahan. "The elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages."[20] *Cullen*, 809 A.2d at 1110 (deletion omitted) (quoting *Nassa v. Hook-SupeRx, Inc.*, 790 A.2d 368, 373 n.10 (R.I. 2002)). "Whether the meaning of a particular communication is defamatory is a question of law for the court to decide rather than a factual issue for a jury to determine."[21] *Id.* (quoting *Beattie v. Fleet National Bank*, 746 A.2d 717, 721 (R.I. 2000)).

Here, plaintiffs aver that "[w]here the question is whether the [p]laintiffs * * * have come forth with sufficient evidence to give rise to a question of whether the alleged torts were committed, the [p]laintiffs * * * are entitled to full consideration of the proffered body of evidence." The plaintiffs make this statement in light of their contention that the depositions, when viewed as a whole, establish a genuine issue of material fact as to whether Moreau had

---

[20] Avoidance of a defamation cause of action can best be summed up with the following words attributed to former President Calvin Coolidge, and previously quoted by this Court: "I have noticed that nothing I never said ever did me any harm." *Burke v. Gregg*, 55 A.3d 212, 215 (R.I. 2012).

[21] Although not necessary to the disposition of this case, it is nonetheless our view that Moreau had a qualified privilege to speak in the interest of the citizens of Central Falls, and that the proffered evidence does not establish a genuine issue of fact regarding whether the "*primary motivating force for the communication was [Moreau's] ill will or spite toward*" plaintiffs. *Avilla v. Newport Grand Jai Alai LLC*, 935 A.2d 91, 96 (R.I. 2007) (emphasis added) (quoting *Swanson v. Speidel Corp.*, 110 R.I. 335, 341, 293 A.2d 307, 311 (1972)). We have stated that "where * * * the causative factor was the common interest, a publisher's resentment toward the person defamed is immaterial and any incidental gratification is without legal significance." *Id.* (alteration omitted) (quoting *Swanson*, 110 R.I. at 341, 293 A.2d at 311).

defamed them.  However, we are mindful of the following language from the case of *Nedder v.*

*Rhode Island Hospital Trust National Bank*, 459 A.2d 960 (R.I. 1983):

> "It is clearly the obligation of the party opposing the motion to direct the motion justice's attention to the specific portions of the discovery materials upon which such party relies and to supplement those materials, where needed, by an affidavit * * *."
> *Nedder*, 459 A.2d at 962.

Wilson and Shannahan have failed in this task, making summary judgment appropriate on their defamation claims.  While the plaintiffs did call the hearing justice's attention to certain discovery materials, we fail to see how placing fourteen volumes of depositions and fifty-one newspaper articles in front of the court, without pointing to how these documents created specific factual issues regarding the elements of defamation, satisfied the plaintiffs' burden for purposes of overcoming summary judgment.  Additionally, when the hearing justice called upon the plaintiffs to do so, they failed to respond with any specific instances in the proffered depositions and articles that would create issues of material fact, and they failed to supplement that information with affidavits or other discovery.  Moreover, although she did so, it was not the responsibility of the hearing justice to scour the depositions and newspaper articles in an attempt to find triable issues of fact.  Accordingly, we hold that summary judgment was appropriately granted in favor of the Trust on Count I of the plaintiffs' complaint.

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. We remand the papers to that tribunal.

Justice Flaherty did not participate.

- 21 -

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Thomas Shannahan et al. v. Charles D. Moreau et al. |
| **Case Number** | No. 2018-22-Appeal. <br> (PC 07-5714) |
| **Date Opinion Filed** | March 11, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Philip E. Irons, Esq. |
| | For Defendants: <br><br> Patrick K. Cunningham, Esq. <br> Michael A. DeSisto, Esq. <br> Marc DeSisto, Esq. <br> Elizabeth M. Noonan, Esq. |