June 24, 2021

**Supreme Court**

No. 2020-253-Appeal.
(MH-20-400)

In re J.T.                        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re J.T.                              :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  The respondent, J.T.,[1] appeals from a

District Court order committing him to a residential living facility for adults with

developmental disabilities.  This case came before the Supreme Court pursuant to

an order directing the parties to appear and show cause why the issues raised in this

appeal should not be summarily decided.  After hearing the arguments of counsel

and thoroughly reviewing the record, we conclude that cause has not been shown

and that this case may be decided without further briefing or argument.  For the

reasons outlined in this opinion, we affirm the order of the District Court.

**Facts and Travel**

The Rhode Island Department of Behavioral Healthcare, Developmental

Disabilities and Hospitals (BHDDH) filed a petition in Sixth Division District Court

---

[1] To protect the identity of the respondent, we will use his initials only.

for civil court certification to retain respondent, a person with developmental disabilities, in a residential facility. The petition asked that respondent be retained at a residential group home operated by the Justice Resource Institute (JRI), located in Cranston, Rhode Island. The petition further asserted that, before being admitted to the JRI home, respondent had been in the custody of the Department of Children, Youth, and Families since 2004, serving a sentence at the Rhode Island Training School (RITS) for an adjudication of delinquency, based on first-degree and second-degree child molestation charges. The petition stated that respondent had been admitted to the JRI facility on his release from the RITS on September 12, 2008.

Although respondent initially remained at the JRI voluntarily, when he signed a form in 2009 indicating that he intended to leave, BHDDH filed a petition with the District Court to retain respondent at the JRI, which petition was granted. The respondent remained at the JRI under court order from 2009 through July 2019, when BHDDH's subsequent petition to continue retention of respondent was denied. BHDDH then filed a new application in September 2019 to retain respondent at the JRI, which was granted by the District Court. BHDDH ultimately filed its petition for retention of respondent at the JRI in September 2020, which is the subject of the

instant appeal. A hearing on the petition was held on September 25, 2020, before a judge of the District Court.[2]

Daniel Manfra, M.D., who was qualified as an expert in psychiatry, testified that he was asked to perform an assessment and evaluation of respondent for the purpose of the potential need to renew a court order and that he reviewed certain records and met with respondent. He testified that respondent's primary diagnosis was "that of intellectual disability disorder, which in his case is substantiated, not only by structural abnormalities found on brain imaging, but valid IQ estimates" and, "most importantly, by a documented consistent history in impairment in adaptive functioning," including "impairments in learning, impairments in self care, in appropriate social interactions, impairments in safety."

As to respondent's adaptive functioning, Dr. Manfra noted that, after the prior retention order was vacated in July 2019, respondent "impulsively left and sporadically returned to the group home, never having an established plan of what he was going to do, where he was going to stay, where he was going to register[3] or

---

[2] While it appears from a review of the docket in this case that a transcript of the hearing on the petition was not filed in this Court, a copy was appended to respondent's statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure. *See Shannahan v. Moreau*, 202 A.3d 217, 225 (R.I. 2019) (utilizing a bench decision in outlining the facts of the case when the decision transcript was appended to the appellant's Rule 12A statement but not included in the record).

[3] Due to respondent's conviction as a juvenile, he is required to register as a Level 3 sex offender.

what medications he was going to take[.]" According to Dr. Manfra, respondent often failed to take his medications, both psychiatric and nonpsychiatric. Doctor Manfra further stated that respondent would not take medications when he left the group home, and that he "would often leave the group home at inopportune times, during severe thunderstorms, and then not know what to do and called the group home."

The doctor testified that he met with respondent on September 9, 2020, and "was struck by the lack of planning and forethought about his ideas to leave the group home[.]" He described various ideas that respondent had, such as staying with his mother or an ex-girlfriend or at a hotel. He particularly noted respondent's "inability to grasp the gravity of the situation, and how to properly register [as a sex offender], and why he should do that, and a plan for that." Doctor Manfra also stated that respondent's "over estimation of his own capabilities," including his ability to be independent, was striking.

Doctor Manfra offered his opinion that respondent required care and treatment at a residential facility, with a residential group home being "the only thing that will, at this point, lessen his risk." The doctor stated that he and the group home director had considered less restrictive options for respondent but believed that residential care was the only suitable option at that time. He agreed that, without

twenty-four-hour supervision, respondent posed a serious risk of harm to himself and others because of his developmental disability.

After hearing testimony from Dr. Manfra and respondent himself, the hearing judge found, by clear and convincing evidence, that respondent "has a developmental disability, and is in need of care and treatment in a facility[,]" and that his "continued unsupervised presence in the community would, by reason of that developmental disability, create a likelihood of serious harm, and that all alternatives have been investigated," deeming those alternatives unsuitable. He ordered respondent to "return to the group home."

An order was entered on September 25, 2020, finding that respondent was developmentally disabled, ordering that he reside at the JRI group home, and directing that he "not leave the group home * * * without the permission of the head of the facility."[4] The respondent filed a notice of appeal to this Court on October 6, 2020.

On appeal, respondent makes two claims. First, he asserts that he is entitled to a *de novo* hearing in Superior Court, pursuant to G.L. 1956 § 40.1-22-10(f).[5] Second, respondent claims that the hearing judge erred in considering his "juvenile adjudication, uncharged conduct[,] and community notification requirement when

---

[4] The order is set to expire on September 25, 2021.
[5] The text of G.L. 1956 § 40.1-22-10 is attached to this opinion at Appendix A.

determining that he is developmentally disabled," and further erred "in relying upon such evidence when determining that [his] discharge from JRI creates a serious risk of harm to himself or others."

## Standard of Review

It is well established that this Court reviews "questions of statutory interpretation *de novo*." *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020) (quoting *Epic Enterprises LLC v. Bard Group, LLC*, 186 A.3d 587, 589 (R.I. 2018)). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012)). "However, when faced with an ambiguous statute, 'it is incumbent upon [this Court] to apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature.'" *Id.* (quoting *Powers v. Warwick Public Schools*, 204 A.3d 1078, 1086 (R.I. 2019)).

Furthermore, "in effectuating the Legislature's intent," this Court reviews and considers "the statutory meaning most consistent with the statute's policies or obvious purposes." *Providence Teachers' Union Local 958, AFT, AFL-CIO v. Hemond*, 227 A.3d 486, 494 (R.I. 2020) (brackets omitted) (quoting *Bailey v. American Stores, Inc./Star Market*, 610 A.2d 117, 119 (R.I. 1992)).

- 6 -

## Discussion

## Section 40.1-22-10

This Court has not had the occasion to construe any portion of § 40.1-22-10, and, thus, respondent presents a question of first impression. What is clear to us is that § 40.1-22-10 was not artfully drafted and contains several ambiguities that we must construe.

Initially, it is clear that respondent is a "person aggrieved by the decision of a district court order for further residential care under the provisions of this section[,]" § 40.1-22-10(f), given that the proceeding that resulted in the order that he must continue to reside at the JRI facility was conducted under the guidance of this chapter. Furthermore, § 40.1-22-10(f) is clear that respondent has a right to "appeal the findings and order of the district court de novo to the court having appellate jurisdiction wherein the facility is located."

However, because § 40.1-22-10(f) does not address or specify if the appeal shall be to the Superior Court or to this Court, we must first identify the designated forum. Again, as set out *supra*, § 40.1-22-10(f) states that the aggrieved party may appeal the order "de novo to the court having appellate jurisdiction wherein the facility is located." It is readily apparent that we are faced with ambiguous statutory language. The inartful drafting of the pertinent statutory language here renders it plainly "susceptible of more than one reasonable meaning." *Balmuth v. Dolce for*

*Town of Portsmouth*, 182 A.3d 576, 585 (R.I. 2018) (quoting *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011)). Again, "because we are confronted with a genuine ambiguity, and not one divined by crafty lawyering, we 'will employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *Id.* (footnote omitted) (quoting *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 (R.I. 2011)).

Article 10, section 2 of the Rhode Island Constitution declares that this Court "shall have final revisory and appellate jurisdiction upon all questions of law and equity." This article was adopted "to make the Supreme Court primarily a court of appellate jurisdiction." *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 426, 267 A.2d 683, 685 (1970). The objective of this section of our constitution "was to make the Supreme Court the court of last resort, the embodiment of ultimate judicial power." *Id.* There is no intermediate appellate court in the State of Rhode Island. *See* Nicholas Nybo, *Preserving Justice: A Discussion of Rhode Island's "Raise or Waive" Doctrine*, 20 Roger Williams U. L. Rev. 375, 381 (2015).

Turning to the statute at issue, § 40.1-22-10(f) references only "the court having appellate jurisdiction[.]" While respondent argues that this means the Superior Court, nowhere in the statute do the words "Superior Court" appear. Therefore, because the Supreme Court is the only court of appellate jurisdiction, the

appeal from the District Court must be taken to this Court. Any other interpretation would require this Court to ignore the statute's appellate jurisdiction language and, in essence, rewrite the statute—"thereby flying in the face of the fundamental principle that a court should not rewrite a statute enacted by the General Assembly." *State v. Diamante*, 83 A.3d 546, 550 (R.I. 2014); *see Little v. Conflict of Interest Commission*, 121 R.I. 232, 237, 397 A.2d 884, 887 (1979) ("It is a primary canon of statutory construction that statutory intent is to be found in the words of a statute[.]"); *see also Rivera v. Employees' Retirement System of Rhode Island*, 70 A.3d 905, 910 (R.I. 2013) ("[W]e are not privileged to legislate, by inclusion, words which are not found in the statute.") (quoting *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I. 1996)); *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008) ("[O]ur assigned task is simply to interpret the act, not to redraft it[.]") (quoting *Sindelar v. Leguia*, 750 A.2d 967, 972 (R.I. 2000)).

Having determined that the Supreme Court is the designated forum in which to take the appeal, we now turn to the timeliness of respondent's appeal. Notably, § 40.1-22-10(f) does not articulate a specific time period within which a notice of appeal must be filed. However, we have explained that:

> "Where there is no limit set forth in the statute as to the time for filing * * * the question remains as to the time when an appeal must be filed. We follow the generally accepted rule that, in the absence of any limitation fixed

- 9 -

by statute, an appeal must be filed within a reasonable time[,] otherwise the appeal will be denied because of laches." *Latham v. State Department of Education*, 116 R.I. 245, 249-50, 355 A.2d 400, 403 (1976).

However, we have also concluded that "laches is not, like limitation, a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced—an inequity founded on some change in the condition or relation of the property or party involved." *Latham*, 116 R.I. at 250, 355 A.2d at 403.

The respondent filed his notice of appeal to this Court on October 6, 2020, eleven days after the order was entered. We can perceive no reason why the doctrine of laches should be invoked, because respondent filed his appeal in such an expeditious manner; and, consequently, we hold that the time within which respondent filed his appeal to this Court is reasonable.

We therefore conclude that § 40.1-22-10(f) is ambiguous, but we hold that respondent's appeal to this Court is timely; and we interpret the statute as providing a direct right of appeal to this Court.[6]

---

[6] In order for the appeal petitions to be heard expeditiously, given the limited time frame of the commitment orders and the deprivation of liberties involved, the District Court should attempt to ensure the expeditious transmission of the record and transcripts in these cases by requiring the use of a stenographer, to be paid for by BHDDH.

## Evidence

The respondent also argues that the District Court judge erred in allowing the admission of Dr. Manfra's testimony regarding respondent's juvenile conviction, his requirement to register as a sex offender, and other uncharged bad acts committed by respondent.

We have explained that, "in accordance with this Court's longstanding 'raise-or-waive' rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal." *Selby v. Baird*, 240 A.3d 243, 246 n.9 (R.I. 2020) (quoting *Adams v. Santander Bank, N.A.*, 183 A.3d 544, 548 (R.I. 2018)). This Court has further observed that "the raise-or-waive rule is a fundamental principle in this state that is 'staunchly adhered to' by this Court." *State v. Doyle*, 235 A.3d 482, 493 (R.I. 2020) (quoting *Cusick v. Cusick*, 210 A.3d 1199, 1203 (R.I. 2019)). It is well settled that "a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *State v. Haffner*, 242 A.3d 468, 478 (R.I. 2020) (quoting *State v. Bido*, 941 A.2d 822, 829 (R.I. 2008)).

The respondent objected twice during Dr. Manfra's testimony—once regarding his testimony about a report prepared previously by another physician, during which Dr. Manfra did not mention the respondent's juvenile convictions or any other uncharged conduct, and again when Dr. Manfra testified that the

respondent had misrepresented himself when he registered for sex-offender purposes as homeless.[7]  Additionally, the respondent himself conceded in his own testimony on cross-examination, without objection, that he is registered as a sex offender. After thoroughly reviewing the record, it is clear to us that the respondent failed to object at the hearing before the District Court to the questioning of Dr. Manfra concerning the respondent's prior conviction, the requirement to register as a sex offender, and other uncharged bad acts.  Thus, we find the respondent's argument waived.

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the District Court.  The record may be returned to the District Court.

---

[7] The respondent did object to the qualification of Dr. Manfra as an expert in psychiatry, but only raised the two objections noted *supra* during the doctor's substantive testimony.

**Appendix A**

General Laws 1956 § 40.1-22-10, "Discharges—Judicial review[,]" provides:

"(a) Any resident over eighteen (18) years of age or married residents under eighteen (18), except any resident who is under court-ordered restriction, shall be free to leave any public or private developmental disabilities facility at any time upon giving written or oral notice of the intention to the superintendent or other head of the facility. The superintendent or other head of the facility may restrict the right to leave the facility to normal working hours and weekdays and, in his or her discretion, may require that certain residents give three (3) days' notice of their intention to leave the facility.

"(b) Where persons are required to give three (3) days' notice of an intention to leave the facility, an examination of the person may be conducted by a team to determine his or her suitability for discharge and to investigate other aspects of his or her case including his or her legal competency and his or her family, home, or community situation to the interest of discharging him or her from the facility.

"(c) If, however, the superintendent or other head of the facility determines that discharge of a person who has given three (3) days' notice would create a likelihood of serious harm to the person himself or herself or to other people by reason of the person's developmental disability, he or she shall forthwith petition the district court of the judicial district wherein the facility is located to order that the person be further retained as a resident. The superintendent or other head may retain the person until the hearing on the petition has been held.

"(d) The court shall cause a notice, as defined in this chapter, of the time and place set for the hearing to be served upon the person and the nearest relative or guardian of the person and the superintendent or other head of the

- 13 -

facility.  In all hearings, the person shall be represented by legal counsel and may present independent clinical testimony.  If the person is found by the court to be indigent, counsel shall be appointed by the court and an independent clinical examination, if requested by counsel for the person, may be provided by the court.  The person shall be allowed not less than forty-eight (48) hours after the appearance of counsel on his or her behalf in which to prepare his or her case.  The person or his or her representative may request either an open or closed hearing in any court proceedings and the court in its discretion may grant the requests.

"(e) If the court finds after the hearing that the discharge of the person would create a likelihood of serious harm to the person himself or herself or to other people by reason of developmental disability, the court shall order that the person be further retained as a resident and the person may not, during the next six-month (6) period, leave the facility except by permission of the superintendent or other head of the facility and no further court action shall be necessary to retain the person during the period.  If the court does not so find, it shall order that the person be forthwith discharged.

"(f) Any person aggrieved by the decision of a district court order for further residential care under the provisions of this section *may appeal the findings and order of the district court de novo to the court having appellate jurisdiction wherein the facility is located.*  In an appeal to a court under the provisions of this section, the findings and order of the district court may be introduced into evidence by either party.  If the appellate court finds after a hearing that discharge of the person would create a likelihood of serious harm to the person him or herself or to other people by reason of developmental disability, the court shall order that the person be further retained as a resident and as such may not, during the next six-month (6) period, leave the facility except by permission of the superintendent or other head of the facility, and no further

- 14 -

court order shall be necessary to retain the person during the period.

"(g) As the basis for its order the appellate court shall make written findings as to the following:

"(1) That the person is developmentally disabled and the evidence upon which this determination is based; and

"(2) That, in accordance with the definition of 'developmental disability' in 40.1-21-4.3(5) as indicated by the court, the discharge of the person would create a likelihood of serious harm to the person himself or herself or to other people by reason of the developmental disability and the evidence upon which this determination is based; and

"(3) Any other issue or evidence, which the court deems relevant and necessary for inclusion in its findings. If the court finds that the person does not meet the definition of 'developmental disability' in chapter 21 of this title such that there does not exist a likelihood of serious harm to the person himself or herself or to other people by reason of the developmental disability, it shall order that the person be forthwith discharged.

"(h) If, at the end of any six-month (6) period of retention, the person is still in need of care and treatment, he or she may, if he or she so desires, be admitted or transferred to other care and treatment in the same or another facility. If the person is unwilling to consent to continued residence, he or she shall be discharged; provided, however, that, if the superintendent or other head of the facility determines that the discharge would create a likelihood of serious harm to the person himself or herself or to other people by reason of developmental disability, he or she shall, prior

to the expiration of the six-month (6) period, petition the district court which made the earlier order to order, under the same procedures, that the person be further retained as a resident, and the person may not during the next one-year period leave the facility except by permission of the superintendent or other head of the facility and no further court order shall be necessary to retain the person during the period. The order may be renewed by the court for additional one-year periods on petition of the superintendent or other head of the facility under the same conditions and procedures and opportunity for judicial review as above. The superintendent or other head of the facility shall be immune from civil suit for damages for retaining a person and petitioning the court pursuant to the provisions of this section.

"(i) Whenever a person before the district court appears to be developmentally disabled and the court determines either that the crime has not been committed or that there is not sufficient cause to believe that the person is guilty thereof, the court may order evaluation procedures as previously provided in this section, or after a hearing as provided in subsections (d) and (e), and in such a case the criminal action shall terminate." (Emphasis added.)

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re J. T. |
| **Case Number** | No. 2020-253-Appeal. (MH-20-400) |
| **Date Opinion Filed** | June 24, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Sixth Division District Court |
| **Judicial Officer from Lower Court** | Associate Judge Christopher Smith |
| **Attorney(s) on Appeal** | For Petitioner: <br><br> Thomas J. Corrigan, Jr. |
| | For Respondent: <br><br> Amy E. Veri, Esq. |